## D. Webster Dougherty, Administrator of the Estate of William Kelly, deceased, Appellant. *v.* William Shillingsburg.

*Trusts and trustees—Parol trust—Decedent's estates.*

While equity will not lend its aid to the creation of a voluntary parol trust, however clear may have been the intention of the donor to create such a trust, yet if the donor himself actually creates or establishes the trust, equity will enforce its execution.

K., the owner of a half interest in an oyster schooner and oyster beds, in his last illness, executed in the presence of witnesses a bill of sale of his property to S., and directed him to pay one third of the money to T., one third to S.'s daughter, a portion of the remainder to K.'s brother, and the balance to the payment of K.'s debts. S. in the presence of and by the direction of K. executed and delivered to T. a note for his share, which he afterwards paid, and delivered to his daughter a note for her share, which he also paid and he paid K.'s debts. It was further proved that K. said at the time "If I get well, everything is mine." *Held*, (1) that the facts showed the creation of a voluntary parol trust which a court of equity would enforce; (2) that the trust was so far executed that there could be no revocation of it by K.; (3) that the transaction had no semblance of a testamentary disposition.

Argued March 27, 1896. Appeal, No. 40, Jan. T., 1895, by plaintiff, from judgment of C. P. No. 2, Philadelphia County, Sept. T., 1893, No. 596, on verdict for defendant. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover the purchase price of an interest in an oyster boat and oyster beds in Delaware bay. Before PENNYPACKER, J.

The facts appear by the opinion of the Supreme Court.

The court charged the jury to find for the defendant.
Verdict and judgment for defendant.     Plaintiff appealed.

*Error assigned* was above instruction.

*Hunn Hanson,* for appellant.—Where it is the purpose of one
to create a trust in favor of a volunteer, he must perfect that
purpose by divesting himself of all control, and by investing
with control the person to be benefited: Lyte v. Peny, 1 Dyer,
49; Colman v. Sarrel, 1 Ves., Jr. 50; Zimmerman v. Streeper,
75 Pa. 147; Milroy v. Lord, 4 De Gex, F. & J. 264; Heartley
v. Nicholson, 23 W. R. 374; Beaver v. Beaver, 117 N. Y. 421;
Walsh's App., 122 Pa. 177; Pringle v. Pringle, 59 Pa. 281.

*George Bradford Carr,* for appellee.—A valid trust was
created by Kelly: Dickerson's App., 115 Pa. 198; Lines v.
Lines, 142 Pa. 149; Helfenstein's Est., 87 Pa. 328; Smith's
Est., 144 Pa. 428; Gaylord v. Lafayette, 115 Ind. 429; Walsh's
App., 122 Pa. 177; Nicholas v. Adams, 2 Whart. 17; Zimmer-
man v. Streeper, 75 Pa. 147; Rogers v. Horsack, 18 Wend.
319; Cowperthwaite v. Sheffield, 3 Comstock, 243; Stone v.
Hackett, 12 Gray, 227; Williams v. Haskins, 29 Atl. Rep. 371.

OPINION BY MR. JUSTICE DEAN, April 6, 1896:

William Kelly was owner of a half interest in an oyster
schooner, also part owner of oyster beds in Delaware bay.     He
was a single man; having fallen sick in June, 1893, he was
taken to St. Agnes Hospital, Philadelphia, where, on the 13th
of September following, he died.     While in the hospital, about
six weeks before his death, he sold, by regularly executed bill of
sale, his interest in the schooner and oyster beds to Shillingsburg,
the defendant, for $3,000.     No part of this money was paid
directly to Kelly during his lifetime.     After his death, the
plaintiff having taken out letters of administration, brought this
suit against Shillingsburg to enforce payment.     As Kelly owed
nothing, there were no creditors claiming the fund; the suit
was wholly in the interest of kin to the intestate.     Shillingsburg
defended, on the ground that the money had been given him on
an express parol trust by the decedent in his lifetime, which in
great part had been executed, and which he was bound to fully
execute according to its terms.

On the evidence at the trial the learned judge of the court below instructed the jury, if they believed it, to find a verdict for defendant; this they did, and from the judgment entered on the verdict plaintiff appeals, assigning for error the instruction of the court that, if the jury believed defendant's evidence, a valid trust had been created in him which he was bound to carry out, and the administrator had no legal claim on the fund.

The evidence showed that Kelly, while in health, lived in Shillingsburg's family, and was only removed to the hospital when his last illness came upon him; on the 24th of July, the day of the sale, he thought death was near; after agreeing upon the price, $3,000, and executing the bill of sale in presence of witnesses, he directed Shillingsburg to pay $1,000 to Kate Turner, for her kindness to him, Kelly; $1,000 to Mendetta, a daughter of Shillingsburg for her kindness to him; then, to pay certain bills against the schooner, amounting to $600; then, by a writing delivered by Shillingsburg to Kelly, it was agreed $346 should be paid to Kelly's brother in Ireland, or to the brother's heirs; then Shillingsburg was to pay his funeral expenses. At the same time Shillingsburg, in presence of and by directions of Kelly, executed and delivered to Kate Turner his note for the $1,000, which he afterwards paid; his daughter being a minor, he delivered to her his note for $1,000, which he afterwards renewed by one payable when she came of age in 1895. He further paid the $600 of bills against the schooner. It was further proven that Kelly said at the time, " If I get well, everything is mine.

These are, in substance, the material facts of which there was evidence, and which are established by the verdict of the jury. Are they sufficient to create in Shillingsburg a parol trust which equity will enforce? It may be conceded that equity will not lend its aid to the creation of a voluntary parol trust, however clear may have been the intention of the donor to create such trust; but if the donor himself actually create or establish the trust, equity will enforce its execution. It will be noticed, the possession of the money was complete in Shillingsburg; it was in his physical control just as fully as if he had handed the $3,000 to Kelly and the latter had handed it back to him; Kelly relinquished all right to the money, except on

the happening of the single contingency, his restoration to health; no change of intention on his part would touch or disturb the dominion of the trustee over the fund, or the right of the beneficiaries to it; there was by the arrangement such transfer of the chattel, even if nothing further had been done, as placed the legal title in the trustee for the benefit of the donees; but, under the facts, there could have been no revocation by Kelly, for by his directions in his presence Shillingsburg drew the two notes, each for $1,000, and delivered them at once to the beneficiaries; he then paid the $600 claims against the schooner, owing by the decedent, and delivered to him the obligation to pay to his brother in Ireland $346.

With the exception of payment of the funeral expenses, the trust was not only fully created by the decedent during his lifetime, but was in nearly every particular, by the express directions of the donor, executed in his lifetime. If Kelly had recovered and attempted to revoke the trust, would any chancellor have ordered the trustee to restore the $3,000 paid out, or for which obligations had been given as ordered by the decedent. What equity would have done, if the trustee had done nothing in execution of the trust, and Kelly had recovered, it is not necessary to decide. Whatever may have been his intention by the declaration, " If I get well, everything is mine," he certainly did not intend the gifts were to take effect only in case of his death, for not only did he create a present trust, by relinquishing dominion over the property to the trustee, but he directed the trustee to relinquish his control by immediate execution of the trust. The transaction had not the semblance of a testamentary disposition, as in the cases cited by appellant. The case, on its facts, is ruled by Lines v. Lines, 142 Pa. 149, and Wagoner's Est., 174 Pa. 558, decided at this term.

The judgment is affirmed.