## James Kelly *v.* William Shillingsburg, Appellant.

*Trusts and trustees—Special fund—Liability of trustee.*

No trustee of a special fund has any right to appropriate any of the funds in his hands to any purpose not clearly directed by the terms of the trust, under which he holds it.

*Practice, C. P.—Affidavit of defense—Implication from detailed items.*

A defendant, having undertaken to set forth in detail in his affidavit the facts upon which he relied for his defense, is presumed to have included all the facts, and these failing when taken together to show a legal defense to the claim set forth in the plaintiff's statement, he cannot save himself by the general declaration at the close of the affidavit " that he has a just and legal defense to the whole of the plaintiff's claim.

Argued Oct. 13, 1896. Appeal, No. 93, Nov. T., 1896, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1895, No. 348, in favor of plaintiff for want of a sufficient affidavit of defense. Before RICE, P. J., WILLARD, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit to recover the sum of $346, with interest.

The plaintiff's statement of claim was as follows:

William Kelly, the brother of plaintiff, on the 24th of July, A. D. 1893, executed a bill of sale to William Shillingsburg, the defendant, by which, in consideration of the sum of $3,000, he sold, transferred and assigned to the defendant all his, the said William Kelly's, interest in a certain schooner or oyster boat, called the Michael Martin, and to certain oyster beds in the Delaware Bay. The said defendant did not pay the said William Kelly the said $3,000, or any part thereof, but he was

instructed by the said William Kelly that after his, the said William Kelly's, death to pay to the plaintiff, the brother of the said William Kelly, the sum of $346 out of the said sum of $3,000.

And the plaintiff says, that the defendant then and there agreed and promised the said William Kelly that he would hold the said sum of money, and pay, after the death of the said William Kelly, the said sum of $346 out of the said $3,000 to this plaintiff on demand, and, in pursuance thereof, executed and delivered the paper, a true copy of which is attached to and made part of this statement of claim.

And the plaintiff says, that afterwards, to wit, September 12, 1893, the said William Kelly departed this life at St. Agnes' Hospital, in the city of Philadelphia.

And the plaintiff further says that by reason of the said promise an action hath accrued to him to deliver and have from the said defendant the said sum of $346 with interest from July 24, 1893.

The paper by which the promise referred to in the statement was made, is as follows:

"PHILADELPHIA, Pa., July 24, 1892.

" On a settlement of this day between William Kelly, of Camdem, New Jersey, and myself, William Shillingsburg, of Camden, New Jersey, there is found to be a balance of $346 due William Kelly, and left in my hands to be paid to his brother, James Kelly, of Moville, County Donegal, Ireland, or his heirs on demand.

(Signed)      " WILLIAM SHILLINGSBURG.
" Witness : KATE TURNER."

The affidavit of defense admitted the purchase of the schooner and oyster beds from William Kelly and that he became trustee for the application of the purchase money of the boats and oyster beds, and that Kelly died as alleged in the statement. The affidavit further averred:

" Kelly directed the defendant to give Mrs. Kate Turner the sum of $1,000; to Miss Maudetta Shillingsburg, the sum of $1,000, and to pay all the fixed charges against the boat for supplies, etc., and for advances of money that had been made by the defendant, which were then thought to be, as stated by

him, about $600, and, thereupon and assuming that what Kelly had said was correct, defendant then and there and at that time executed the paper, upon which plaintiff claims to recover, dated July 24, 1893, but, in point of fact, it turned out that the bills of Wilson & Crawford on the vessel, instead of being $391 were $402.64, which the defendant paid, the difference being $11.64 for which the defendant claims credit. Another bill came in against the schooner from the Greenwich Pier Railway Company amounting to $31.16, for which the defendant claims credit and for which he has a receipt.

" After the papers had been executed and the notary public had gone away, Kelly said to defendant : ' You pay the bills when I am dead, and I will be buried from Mrs. Turner's.'

" In point of fact, the defendant, upon the 19th of February, 1894, paid to Welsh & Naulty, undertakers, for burying Kelly, the sum of $134, and has their receipt, for which he claims credit.

" Defendant further states that, as of September term, 1893, C. P. No. 2, No. 596, Daniel Webster Dougherty took out letters of administration upon the estate of William Kelly and, thereupon, brought an action as of the above number and term to recover from defendant the sum of $3,000, which was the purchase price of the boat and the oyster beds. The case came on for trial, and a verdict was rendered for the defendant on the ground that Kelly had created in him, Shillingsburg, an express trust as to the application of the $3,000, and that the administrator had no claim whatever against him.

" A motion was made for a new trial, which was refused, whereupon Dougherty, the administrator, took the case to the Supreme Court and, after argument, on Monday, April 6, 1896, the Supreme Court handed down an opinion affirming the judgment of the court below, sustaining the contention of Shillingsburg, the defendant, that he was trustee for Kelly for the application of the $3,000.

" The defendant, by reason of the action of the said Dougherty, administrator, in bringing his suit, has been put to great trouble and expense, and hath been obliged to lay out and expend divers large sums of money, to wit : the sum of $175 for counsel fees and other necessary expenses, and he therefore claims to be entitled to set-off, as against any claim made in the pres-

ent suit, the sums of money which he, the defendant, hath been obliged and compelled to lay out and expend in and about the defense of the trust which had theretofore, to wit, on the 24th day of July, 1893, been created in him by said William Kelly, deceased.

"And the defendant avers, and therefore states, that, in point of fact, he hath laid out and expended the said sum of $11.64, the said sum of $31.16, and the sum of $134, and the further sum of $175, making a total of $351.80, which is an amount in excess of plaintiff's claim, as sued for in this case.

" The defendant avers, and therefore states and verily believes, that he has a just and true defense to the whole of plaintiff's claim as sued upon, and that the plaintiff in this suit is not entitled to recover a dollar until all claims and demands in the nature of debts against decedent's estate are fully paid and discharged.

"All of which foregoing facts the defendant expects and believes he will be able to prove upon the trial of this cause."

The validity of the trust under which this suit was brought was determined in Dougherty v. Shillingsburg, 175 Pa. 57. The court entered judgment for want of a sufficient affidavit of defense.

Damages were assessed at $420.06.   Defendant appealed.

*Errors assigned* were, (1–3) entry of judgment for want of a sufficient affidavit of defense.

*Geo. Bradford Carr*, for appellant.

*D. Webster Dougherty*, for appellee.

Opinion by Beaver, J., November 9, 1896:

In view of the change in the time fixed for the hearing of appeals for Philadelphia and of the circumstances of the case, which were made known to us at the hearing, we overrule the motion to quash the appeal and determine it upon its merits.

If the defendant has a good defense to the claim of the plaintiff, it is not set out in the affidavit which we are called upon to consider.   Dougherty v. Shillingsburg, 175 Pa. 56, determines the validity of the trust created by William Kelly in his

lifetime and fixes the obligations of the trustee who is the appellant here and the defendant in the court below. The ground upon which the Supreme Court based its decision in the case above mentioned was the fact that the trust had been so far executed in the lifetime of Kelly by reason of the obligations which the appellant gave to the plaintiff among others that it would have been inequitable to rescind the trust. The defendant admits that he had in his hands as the proceeds of the schooner and Oyster Bed in Delaware bay the sum of $3,000. Out of this he paid or agreed to pay, as directed, to Mrs. Kate Turner, $1,000. He paid or agreed to pay to his daughter, Maudette Shillingsburg, $1,000. He agreed to pay charges against the boat for supplies, etc., amounting to about $600. There is no allegation in the affidavit that he paid charges amounting to the full sum of $600. He alleges that he paid Wilson & Crawford $402.64 and the Greenwich Pier Railway Company $31.16. This would leave a sufficient sum in his hands, after paying the obligation upon which this suit is brought, to pay all the funeral expenses and more than the plaintiff's share of the alleged expenses of sustaining the trust. But was he bound to pay the funeral expenses ; or, admitting that there were legal claims against William Kelly in excess of the $600 alleged by him to be the amount of charges against the schooner, was the defendant bound to pay them? We think not. There is no allegation in the affidavit of defense that he had no other estate. If there were such an estate, all legal claims against the decedent outside of what were expressly fixed by him to be paid by the trustee should have been paid by the administrator. If there were no such estate, it should have been distinctly alleged in the affidavit. The alleged declaration set forth in the affidavit of defense, that "after the papers had been executed and the notary public had gone away, Kelly said to defendant, 'You pay the bills, when I am dead, and I will be buried from Mrs. Turner's,'" even if it be admitted that the bills referred to were funeral expenses, it can scarcely be regarded as raising such a trust as would justify the defendant in paying them at the expense of the appellee. What bills? "Pay the bills" out of what funds? So much of imagination and inference must enter into the answer to these questions that they cannot be allowed to frustrate and nullify a clear

and express trust evidenced by the written obligation of the appellant to the appellee: See Class v. Kingsley, 142 Pa. 636. If any of the amounts directed to be paid by the trustee, for which he gave his obligation, were to be scaled down, there is no reason why that given to the brother should bear the entire burden of funeral and other expenses and those of Mrs. Turner and the daughter of the appellant should be paid in full. So far as the affidavit itself is concerned, however, as we have already said, we cannot discover from it that the appellant has paid more than the amount of the funds intrusted to him.

The appellant, having undertaken to set forth in detail in his affidavit the facts upon which he relied for his defense, is presumed to have included all the facts, and these failing, when taken together, to show a legal defense to the claim set forth in the plaintiff's statement, he cannot save himself by the general declaration at the close of the affidavit " that he has a just and true defense to the whole of the plaintiff's claim." On a careful consideration of the case, we discover no error in the court below in making absolute the rule for judgment for want of a sufficient affidavit of defense. The judgment is, therefore, affirmed.