## D. HIESTAND ET AL. v. L. WILLIAMSON ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.

Argued March 11, 1889—Decided October 7, 1889.
[To be reported.]

1. A sheriff's sale of land under a judgment recovered subsequent to a fraudulent conveyance thereof by the defendant, will, if no reconveyance have been made to the defendant, merely vest in the purchaser

the right which creditors had to avoid the conveyance, without divesting liens in existence when the conveyance was made.

(*a*) Henry, the defendant in a judgment entered in favor of Leah et al., conveyed his land upon which the judgment was a lien to Daniel, his son, in consideration of one dollar, subject to existing liens. This conveyance was duly recorded. Schmoyer, a creditor of Henry, subsequently recovered a judgment against him, the apparent title to the land still remaining in Daniel.

(*b*) Daniel then reconveyed the land to Henry in consideration of one dollar, by a deed not put on record. Afterward, Schmoyer issued execution and caused the land to be put up at sheriff's sale, when Daniel gave notice at the sale that he owned the land by virtue of the deed from Henry to himself, and that Henry had no title thereto, concealing the fact that he had reconveyed it to Henry.

(*c*) After having given said notice, Daniel became the purchaser of the land at the sale for a nominal sum, afterwards receiving a deed from the sheriff. Leah et al. then issued a scire facias to revive their judgment, and caused the same to be served on Daniel as terre tenant, who made defence on the ground that their lien was discharged by the sheriff's sale.

2. Daniel's notice at the sale being averred in the affidavit of claim, and not denied in his affidavit of defence, judgment was properly given against him for want of a sufficient affidavit of defence, as he was estopped by the notice from alleging against Leah et al. that in consequence of his reconveyance to Henry the sale passed to him Henry's entire title, discharged of liens.

3. An allegation in an affidavit of defence that there is no balance due on the judgment sought to be revived by a scire facias, is an insufficient averment of its payment. To prevent judgment, the affidavit must set out, with a reasonable degree of particularity, any payments on the judgment, and when and how the same were made.

Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM, and MITCHELL, JJ.

No. 376 January Term 1888, Sup. Ct.; court below, No. 17 April Term 1884, C. P.

On February 27, 1884, Leah Williamson et al. caused to be issued a writ of scire facias to revive, et quare executionem non, judgment No. 227 February Term 1879, entered in their favor and against Henry Hiestand and others, in the sum of $3,500. Daniel Hiestand, named as a terre tenant in the writ, on April 18, 1884, filed an affidavit of defence. A rule was thereupon taken by plaintiffs for judgment for want of a sufficient affidavit of defence, which rule on September 10, 1884, was discharged.

On June 30, 1887, the plaintiffs filed an affidavit of claim, averring:

That said judgment was entered on March 3, 1879, and thereby became a lien upon a certain farm containing 159 acres and 156 perches, and a certain lot containing 12 acres more or less, both belonging to Henry Hiestand, one of the defendants; that on April 9, 1879, while this judgment was a lien thereon, Henry Hiestand and wife conveyed the said real estate to their son, Daniel Hiestand, for the consideration of one dollar, subject to certain charges mentioned in the will of Abraham Hiestand, and subject " to all mortgages and judgments now remaining a lien on said land, " this conveyance being recorded in the proper office in said county; that on October 29, 1883, David Schmoyer recovered a judgment against said Henry Hiestand, upon which an execution was issued November 26, 1883; that under this execution a levy was made on all Henry Hiestand's right, title and interest in said farm and lot, and the sheriff sold the same, under a venditioni exponas, on February 9, 1884, to Daniel Hiestand; that prior to this sale, but on the same day, Daniel Hiestand had given notice to the sheriff that he was the owner of said real estate by virtue of said deed of April 9, 1879, and that Henry Hiestand had no interest therein; that the lien of plaintiffs' judgment was not discharged by the sheriff's sale under the Schmoyer judgment, being against an entirely different title of the defendant in said real estate from that sold by the sheriff, and plaintiffs were entitled to a judgment of revival and award of execution for $2,929.57, with interest, against all the defendants as well as against Daniel Hiestand, terre tenant.

Notice of the filing of this affidavit having been given, Daniel Hiestand, on July 18, 1887, filed a second affidavit of defence, and a second rule for judgment for want of a sufficient affidavit of defence was then taken. Before said rule came on for hearing, Daniel Hiestand, by leave of the court, filed a supplemental affidavit. His three affidavits made contained the following averments:

That the affiant was not indebted, directly or indirectly, to the plaintiffs under and by virtue of the judgment they were seeking to revive, and had never agreed or promised to pay it; that there was no balance due on said judgment; that the filing

of a second affidavit of claim after the court had discharged the first rule for judgment and had held the affidavit of defence good, was irregular; that neither Henry Hiestand nor any of the defendants in the judgment, had any interest in the real estate, mentioned in plaintiffs' affidavit of claim, at the time the scire facias was issued; that, subsequent to the conveyance of said real estate to the affiant by Henry Hiestand, the affiant on November 6, 1883, sold all said real estate to said Henry Hiestand, and on said day made and delivered to him a deed therefor, reconveying it in consideration of the sum of one dollar, subject to the charges mentioned in the will of Abraham Hiestand and also to all mortgages and judgments then remaining a lien upon said land, which deed said Henry Hiestand then and there accepted; that said deed had not been recorded, but a copy thereof was made a part of affiant's affidavit of defence; that on the date of said reconveyance the plaintiffs' judgment was of record in the same condition in which it had been at the time of the conveyance from Henry Hiestand to the affiant, and as between Henry Hiestand and the affiant payment thereof was assumed by the former and the latter was released from all liability therefor, if any had ever attached to him; that by the sheriff's sale of said real estate under the judgment of David Schmoyer, in pursuance of which the sheriff, on February 18, 1884, made, duly acknowledged and delivered to affiant his deed conveying said real estate to affiant, in consideration of $100, subject to a first mortgage for $7,500 owned by Edward J. Fox, the lien of plaintiffs' judgment on said land was discharged, and the title was now in the affiant, unincumbered so far as the alleged lien or alleged judgment of the plaintiffs was concerned.

These affidavits contained no denial of the averments in the affidavit filed by plaintiffs, as to Daniel Hiestand's having given to the sheriff a notice setting up a claim of ownership of the land in question and denying Henry Hiestand's title thereto. It should be noted, that from the statement of the case contained in the paper books it appeared that the Kroch judgment, mentioned in the opinion of the Supreme Court, was one obtained by Reuben Kroch against Henry Hiestand on June 9, 1889, after the latter had conveyed to his son Daniel.

After argument, the court, SCHUYLER, P. J., on February 13, 1888, entered judgment for the plaintiffs for $3,007.57, delivering the following opinion:

From the affidavits of claim and defence we glean the following facts: The judgment sought to be revived was entered March 3, 1879, and became a second lien upon the real estate of the defendant, the first lien being a mortgage. On April 9, 1879, the defendant conveyed his real estate to his son Daniel for the consideration of $1, subject of course to the liens against it. On October 29, 1883, one Daniel Schmoyer obtained judgment against the defendant, Henry Hiestand, and on the same day issued execution. On November 6, 1883, Daniel Hiestand for the consideration of $1 and subject to liens, reconveyed the real estate to his father. On February 9, 1884, the sheriff, under the Schmoyer execution, sold the real estate for $100, Daniel Hiestand for the second time becoming its purchaser. Prior to the sale, Daniel gave to the sheriff written notice not to sell the real estate, claiming it as his own, and threatened that he would contest the title with the purchaser. The present scire facias was issued February 27, 1884 and, notice having been served on Daniel as terre tenant, he is here single handed resisting the revival of the judgment as against himself, on the theory that the lien of the judgment had been discharged by the sheriff's sale. At the time of the sheriff's sale, the deed from Henry Hiestand to his son had been recorded, but the deed reconveying the property was never recorded.

The rule that a judicial sale divested all liens is a creation of the courts and of ancient establishment, but it is not of universal application. Special cases require special adaptation of it: Fisher's App., 33 Pa. 595. In that case, it was held that a sheriff's sale of lands under a judgment obtained after the execution of a conveyance by the defendant, which is fraudulent as to creditors, does not discharge prior liens. The ground of the decision was fraud. [Here too we have fraud most palpable. The claim made to the sheriff by Daniel, that the property belonged to him, was a shameless falsehood. Moreover, it was a falsehood that was well calculated to deceive, because the deed to Daniel from his father had been carefully placed on record, whereas the deed from Daniel back to his father had been just as carefully withheld from record.

That the claim did deceive is a fair inference from the fact that the real estate was struck down to Daniel for a sum which was barely sufficient to pay the costs indorsed on the execution.] [3] [Fortunately for the cause of justice the time when such trickery as this could successfully shield itself behind a technical rule, has long since passed.] [4] [The fact of the claim and notice to the sheriff is taken from an averment in the affidavit of claim, which is not denied by the affidavit of defence. The averment is necessarily involved in the plaintiff's case and being undenied, it must be taken as admitted:] [5] Bank of U. S. v. Thayer, 2 W. & S. 443; Moulton Iron Co. v. Coleman, 31 Pa. 82.

The rule for judgment was made absolute, judgment of revival entered, and the sum due liquidated at $3,007.57. Thereupon the defendants, and Daniel Hiestand, the terre tenant, took this writ, specifying that the court erred:

1. In entering judgment for plaintiffs and against defendants.
2. In not discharging the rule for judgment.
3–5. In the portions of the opinion included in [ ] [3 to 5]

*Mr. William Fackenthall* and *Mr. B. F. Fackenthall* (with them *Mr. Harry G. Stiles* and *Mr. John D. Stiles*), for the plaintiffs in error:

The court did not decide how much, if anything, was due on the plaintiffs' claim against Henry Hiestand. In February, 1884, the plaintiffs served notice on the sheriff, that the amount due on their judgment was $1,222, and yet judgment is entered for them for $3,007.57. The court adopted the plaintiffs' statement of the claim, and gave judgment for the full amount asked, ignoring the counter allegation of defendants that there was nothing due the plaintiffs on the judgment. The question of fact thus raised should have been submitted to a jury. We can only account for the judgment on the hypothesis that the court overlooked the averment in our affidavit.

1. In saying that the claim made to the sheriff by Daniel was a falsehood well calculated to deceive, because the deed to him from his father had been carefully put on record and the reconveyance just as carefully withheld from record, the court found as facts: (1) that the deed from Henry to Daniel

was recorded for the purpose of committing a fraud; (2) that the deed from Daniel to Henry was withheld from record for the same purpose, and (3) that Henry and Daniel were in collusion for the purpose of defrauding Henry's creditors. The deed from Henry and wife to Daniel could not affect lien creditors, because expressly made under and subject to the liens, and no other creditors are complaining of it. That from Daniel to Henry is also under and subject to the liens upon the property. If this deed had been recorded, there would be no room for a question of fraud. Failing to record is not fraud per se, and the court should not have found fraud from this fact alone. Daniel had no concern with the question whether his grantee recorded the deed or not. The failure to record was Henry's act. To make it a fraud, there must be collusion, and this is within the province of a jury to pass upon.

2. There is no allegation of fraud or collusion in the affidavit of claim. The affidavits of record, together, simply raise the issue whether the title against which plaintiffs claim a lien was the same that was sold by the sheriff, and this issue should have been submitted to a jury. The further finding by the court, as an inference, that the notice to the sheriff deceived the plaintiffs, is unsupported, as the affidavit of claim neither alleges that they were deceived nor did it show the circumstances from which the court drew the inference. Suppose the plaintiffs had knowledge of the reconveyance; could they be deceived by Daniel's claim? Yet they did not, nor do they now, so far as we know, deny such knowledge. Nor does it appear anywhere that they were present at the sale or ever knew of the notice Daniel gave there. All these questions of fact should have been passed on by a jury, who should have determined what the effect of Daniel's conduct was.

3. The court below decided this case entirely upon the authority of Fisher's App., 33 Pa. 294. The decision in that case was sound as applied to its facts; it simply wiped out the deed made by the judgment debtor to his son, in fraud of his general creditors. It would apply here if any creditors of Daniel Hiestand were to contest the deed made by him as a fraud upon them. But plaintiffs do not claim to be creditors of Daniel and there was no sheriff's sale of his interest. If there were any allegation of fraud here, it would be that the title

passed to the father fraudulently, and the judgment creditor cannot complain of the fraud which puts a title into his debtor. The language used in Fisher's Appeal, applied to our case, shows that the lien of plaintiffs' judgment was divested by the sheriff's sale to Daniel Hiestand. Plaintiffs do not show what title it was, other than that sold by the sheriff, upon which they claim to have a lien. We content ourselves, therefore, with showing that the lien on Daniel's land was divested by the sale, and that there was no liability on his part to pay the judgment, the words "under and subject" in the deed being insufficient to create such liability: § 1, act of June 12, 1878, P. L. 205; Hirst's App., 92 Pa. 491; Moore's App., 88 Pa. 450; Samuel v. Peyton, 88 Pa. 465; Thomas v. Wiltbank, 6 W. N. 477; Taylor v. Mayer, 93 Pa. 42; Paul v. Casselberry, 8 W. N. 334; Davis's Appeal, 89 Pa. 272.

*Mr. George F. P. Young,* for the defendant in error:

Defendants now contend for the first time that the judgment ought to be for $1,222, instead of $3,007.57. Nowhere on this record does it appear that the plaintiffs ever gave notice that they claimed only $1,222. It was not sufficient to make the vague allegation in the affidavit of defence that there was no balance due on the judgment.

1. The court could well find the fact of fraud from what was before them and the intervention of a jury was not required. It was impossible for plaintiffs to charge fraud in their affidavit before it was discovered by a comparison of the statements in Daniel's affidavit with his claims at the sheriff's sale. The sale under the Schmoyer judgment could not divest the lien of our judgment. It was held for the purpose of giving the purchaser an opportunity to contest the validity of the deed under which Daniel then claimed, and passed an entirely different title of Henry Hiestand from that on which our judgment was a lien. Daniel is estopped from setting up another title of Henry than as represented by himself at the sale. We do not admit, however, that our case depends alone upon Daniel's statement, nor upon the withholding of the deed to Henry from record. We rely upon Fisher's App., 33 Pa. 294; Byrod's App., 31 Pa. 241; Garrard v. Lantz, 12 Pa. 186: Patterson's Est., 25

Pa. 71; Neel v. Bank, 11 Pa. 17; Mix v. Ackla, 7 W. 317; Taylor v. Smith, 2 Wh. 432.

OPINION, MR. JUSTICE CLARK:

The deed of Henry Hiestand to Daniel Hiestand was dated April 9, 1879, and, for anything that is shown, was on that day delivered. The judgment of David Schmoyer against Henry Hiestand was not entered until October 29, 1883, which was four years, six months and more, after Henry Hiestand had parted with his title. If the sale and conveyance were in good faith, the judgment was not a lien upon the lands in question. If the transaction was fraudulent, the sale would seem to be a means of vesting in the purchaser the right which the creditors had to avoid the conveyance; it would not affect prior liens except such as were entered after the date of the fraudulent deed. In this instance, if we leave out of view altogether the effect of the deed of November 6, 1883, the sheriff's sale on the execution of Schmoyer discharged the Kroch and Schmoyer judgments. These judgments were liens upon such interest only as Henry had in the land for his creditors, after he had delivered his deed to Daniel Hiestand. If that conveyance was bona fide, he had no title whatever remaining; if not, his creditors affected by the fraud had a right to resort in this form to the land for payment of their debt. The title conveyed by the sale was conditioned, therefore, upon the existence of fraud, and such a sale would not discharge the liens against the absolute title.

As this Court said in Fisher's App., 33 Pa. 294, one set of creditors cannot raise a clamor of fraud which would discharge the liens of others against the absolute and indefeasible estate. To this effect, also, are Byrod's App., 31 Pa. 241, and Hoffman's App., 44 Pa. 95. It is clear, then, if the case rested here, that the plaintiffs would be entitled to revive this judgment, as not only the deed of April 9, 1879, but also the sheriff's deed of 18th of February, 1884, was subject to the lien of the plaintiffs' judgment.

But it is said that on November 6, 1883, Daniel Hiestand reconveyed the land to his father, Henry Hiestand, and, although the deed was not recorded, the subsequent levy and sale on the Schmoyer judgment passed the absolute estate to Daniel,

freed and discharged of this lien, and subject only to the liens created by the will of Abraham Hiestand, deceased, and the Fox mortgage. However this might have been, under ordinary circumstances, it does not lie in the mouth of Daniel Hiestand, the terre tenant in this case, to say so. He attended the sheriff's sale in person and gave explicit and clear notice that his father, Henry Hiestand, had no interest in the property, but that he, Daniel Hiestand, was the owner thereof, by virtue of the deed of April 9, 1879. This was a wilful and deliberate falsehood, for he could not have been ignorant of the fact, that only three months before he had delivered a deed to his father reconveying the absolute estate. An act so deliberate could not, in so short a time, have escaped his memory. The notice was calculated to deceive, and was, doubtless, so intended. That the plaintiffs acted upon it is plain, for that fact is set out in the affidavit of claim as the ground of their recovery. The theory of their case was and is that, under the rule of the case cited, they had " a lien against an entirely different title of the defendant in said real estate from that on which it was sold by the said sheriff, and that their lien was not divested or discharged by the sheriff's sale." The notice at the sale is wholly inconsistent with the evidence he now proposes to give, and as the plaintiffs appear to have acted upon the notice, he will not now be allowed to set up the deed to their injury; having deliberately asserted a falsehood to their injury, he will not now be heard to assert the truth. If it be true that the judgment was entered in a sum too large, that is the fault of the affiants. They should have set out in their affidavits, with a reasonable degree of particularity, how and when the payments were made. If any injustice has been done in this respect, they may, perhaps, have relief in another form.

The judgment is affirmed.