# Ritter, Appellant, *v.* Wray.

*Contract—Sale—Sale of merchandise in bulk—Notice to creditors—Fraud—Act of March 28, 1905, P. L. 62.*

1. Under the Act of March 28, 1905, P. L. 62, relating to the sale of merchandise in bulk, and requiring notice to creditors of a proposed sale of such character, the failure to give notice to one creditor of the proposed sale, does not make the sale fraudulent and voidable as to creditors who received proper notice.

°2. The use of the term "creditors" in the phrase of the act "the creditors of the seller" was intended to distinguish between creditors and other persons, that is, to show that the sale is not fraudulent and voidable as to every person, but only as to creditors.

*Statutes—Literal construction—Narrow construction—Broad construction—Mischief and remedy—Reason and spirit.*

3. The literal construction of a statute has, in general, but a prima facie preference. And where it appears that the mischief and the remedy contemplated warrant and require a construction according to the narrow, instead of the broader meaning that may be attached to the words, that construction should be adopted. The effects and consequences of the proposed construction of a law, as well as its reason and spirit, will be looked into in determining the legislative intent, which is the criterion by which all acts must be construed.

*Contract—Sale—Sale of merchandise in bulk—Fraud—Attack on sale —Act of March 28, 1905, P. L. 62.*

4. Where a sale in bulk of a stock of merchandise has been consummated for more than three months, no attack on the sale for lack of notice to creditors of the vendor, can be made by a levy on the merchandise sold.

Argued Oct. 27, 1910. Appeal, No. 196, Oct. T., 1910, by plaintiff, from judgment of C. P. Blair Co., June T., 1910, No. 122, on verdict for defendants in case of Edwin Ritter v. Wray, Moore & Company, Ltd. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Sheriff's interpleader to determine right to levy on stock of merchandise sold in bulk.

BALDRIGE, P. J., charged in part as follows:

Under the evidence here it appears that Mr. Ritter, the plaintiff, attempted to purchase from a man by the name of Hartman, who had a store at Lakemont, in this county, on April 15, or 16, according to his testimony. The plaintiff stated on the witness stand that he asked Mr. Hartman for a list of his creditors and that they included the four defendants in this case, which are before you. Ritter testified further that he himself went to see the firm of

Kohler & Company and W. W. Blake & Company, and notified them in person that he was about to buy Hartman out and asked for a statement of their claims and he testified that he received a statement. That so far as the other two defendants are concerned, namely, Wray, Moore & Company and Hinman & Company, that he did not go personally to see them, but that he sent a Mr. Weaver, and Weaver testified that is a fact, that he was sent and that he went to see these creditors and told them the purpose for which he came, namely, to advise them of the fact that Ritter was buying Hartman out and to get a statement of the amount due from Hartman to them.

We say to you that if that testimony is a fact, if you believe the plaintiff, that he took these precautions, and gave the notices as he testified that he gave, that would be a compliance with this act so far as notices are concerned. The requirements of the Act of March 28, 1905, P. L. 62, relative to notice are as follows, to wit: "The purchaser shall, at least five days before the consummation of the sale, give personal notice of said proposed sale, to each of the creditors of the seller as appearing on said list, or use reasonable diligence to cause personal notice to be given to them, or shall deposit in the mail a registered letter of the notice." The plaintiff claims that he did give such notice and that such notices were given at least five days before the sale; and as I said a moment ago, if it is a fact, if you find that that is a fact, then you would find a verdict in favor of the plaintiff.

On the other hand, the witnesses for defendants go on the stand and testify that Mr. Ritter did call at the place of business of Kohler & Company, but only for the purpose of getting a statement, but plaintiff did not notify Kohler nor did he notify Blake that he purposed to purchase the store from Hartman; if plaintiff was at the defendant's office, it was simply for the purpose of getting a statement of the amount due. You remember the testimony of Mr. Kohler and of the manager of the firm, another Mr. Kohler, on that point. The plaintiff, on the

other hand, argues that defendants did not call the book-keeper, and that Mr. Ritter may have had the alleged conversation with the bookkeeper, who was not called. The bookkeeper for Mr. Blake was called, and he says that no such conversation as was testified was had; that, while he came to the store, it was simply for the purpose of asking the amount due, which he at first demurred to giving, but subsequently did give. But the bookkeeper says that was the only thing that occurred and that he did not receive notice that Ritter was buying Hartman out, and Mr. Blake said that he did not receive such notice. Now, Mr. Wray, of the firm of Wray, Moore & Company, says that Weaver did come to see him, but that he did not tell him that Ritter was buying Hartman out; he came there and simply asked for a statement of his account. You remember Mr. Hinman testifies that while Weaver was there, he did not tell him that Ritter was buying Hartman out.

Now, the mere fact that plaintiff or some one representing him went and asked for a statement is not sufficient; the plaintiff must also connect with that statement a notice to the effect that Ritter was buying Hartman out, and if you find that they did go there and ask for a statement and did not notify any of these merchants or either of them that Ritter was buying Hartman out, then your verdict would be for the defendants. The defendants have put in evidence a letter from Mr. Flick, attorney for Mr. Ritter; that letter, as you will recall, and according to my recollection, was written on April 17, and in that letter Mr. Flick calls attention to the fact that on that day Ritter purchased the store from Hartman and that they desired to give notice to these creditors to whom the letters were sent, and the defendants argue by reason of that fact the way the letter was written that that was the first notice that they had received and that Mr. Ritter recognized the fact that that was the first notice by sending such a letter. On the other hand, Mr. Fletcher, representing Mr. Ritter, argues to you that that letter was sent by

reason of extraordinary precautions, and that they desired to protect every person and did not desire to cheat any person; and that was the purpose of sending out that letter.

[Now, the question, as I view this case, narrows itself down as to whether or not notice was given at the time and in the manner required by this act which I have read to you; that is the pivotal question, and that is the question for your determination. It is your duty to take into consideration the various witnesses who have testified, and conclude as to who is telling the truth or who is falsifying, or to reconcile the testimony in so far as you can to determine, from the weight of the evidence, where the truth really lies. If you come to the conclusion that Ritter notified these four defendants at the time and in the manner required by law, then your verdict would be for the plaintiff. If, on the other hand, you would find as a matter of fact that neither Ritter nor Weaver, his representative, gave the notice in the time and manner required by this act to the defendants, then your verdict must be for the defense; that is to say, that even if notice was given in the time and in the manner—say to either of these defendants, and was not given to one as required by law, still your verdict must be then for the defendants, as the law requires that proper notice must be given to all of these parties of record.] [2]

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned* among others was (2) portion of charge as above, quoting it.

*W. C. Fletcher,* with him *E. H. Flick,* for appellant.

*Thos. C. Hare,* for appellee.

Opinion by Rice, P. J., March 3, 1911:

It is declared in the Act of March 28, 1905, P. L. 62,

that the sale in bulk of the whole, or a large part, of a stock of merchandise, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, shall be deemed fraudulent, and voidable as against the creditors of the seller, unless the purchaser shall, in good faith, and for the purpose of giving the notice required by the act, make inquiry of the seller, and obtain from him a list in writing of the names and places of residence or business of each and all of his creditors, and, unless the purchaser shall, at least five days before the consummation of the sale, give personal notice of the proposed sale, to each of the creditors of the seller as appearing on said list, or use reasonable diligence to cause personal notice to be given to them, or shall deposit in the mail a registered letter of notice, postage prepaid, addressed to each of the seller's said creditors at his post office address, according to the written information furnished. Ritter, the plaintiff in this sheriff's interpleader, claimed title to the greater part of the goods in question, under such a sale as is contemplated by the act; and Wray, Moore & Co., Limited, the defendants in the issue, were creditors of Hartman, the seller, at and for some time before the consummation of the sale, which was on April 15 or 16, 1909. It is undisputed that Ritter obtained from Hartman a list of his creditors. But the defendants in the issue denied that any notice of the proposed sale was given to them, except by a letter which was mailed on April 17. One of the defendants testified, however, that about April 1, Elmer Weaver called at their place of business and requested them to give him, for Ritter, a statement of the amount that Hartman owed them, and that they complied with his request. Weaver testified that he was acting for Ritter, and that at this interview he told the person with whom he conversed, that Ritter was about buying out the store and wanted to know the exact amount of Hartman's indebtedness to the defendants. It is thus seen that, while the fact was in dispute, there was evidence from which the jury could find that Ritter, through

Weaver, gave personal notice to the defendants of the proposed sale, in due season.   There was a conflict of evidence as to whether Ritter gave personal notice of the proposed sale to certain other creditors.   In short, to present the question as concisely as possible, the jury could find that Ritter gave due personal notice to Wray, Moore & Co., Limited, the defendants in the issue, but failed to give such notice to three other creditors.   The court charged, in substance, that, in the event of the jury so finding, their verdict must be for the defendants.   The assignment of these instructions for error fairly raises the question whether, under the act of 1905, the failure to give notice to one creditor, of the proposed sale, makes the sale fraudulent, and voidable as to creditors who received proper notice.

It is not to be denied that the words, "shall be deemed fraudulent, and voidable as against the creditors of the seller," taken in their most comprehensive sense, would include every creditor of the seller.   So, by adhering to the very letter, a plausible argument could be made, indeed has been made in another case, that the remedy is given to the creditors collectively, and not to a single creditor acting independently.   As to the latter proposition, we held in Wilson v. Edwards, 32 Pa. Superior Ct. 295, that it is not incumbent on a creditor, as to whom such a sale is fraudulent and voidable, to obtain the co-operation of other creditors.   "He has the right to attack it in the method which was always an available and appropriate method for a creditor to pursue in order to invalidate, that is, to render of no legal force and effect, so far as the collection of his claim is concerned, a sale of chattels by a debtor, which as to such creditor is voidable upon the ground of fraud."   In the construction of the statutes of Elizabeth, relating to fraudulent conveyances, it has been held that they are voidable as to creditors, only so far as to enable such persons as are prejudiced thereby, to enforce their demands against the grantor: Haak's App., 100 Pa. 59.   For example, a conveyance intended to defraud

creditors is not void, but only voidable by the creditors whom it tended to defraud; and this does not include prior lien creditors: Byrod's App., 31 Pa. 241. A conveyance in fraud of creditors, made with the full knowledge of existing creditors, is valid so far as the creditors who assented to or affirmed the conveyance are concerned: Zuver v. Clark, 104 Pa. 222; Mitchell v. Mitchell, 212 Pa. 62. If the purpose of the act of 1905, and the mischief it was intended to prevent, be considered, it could scarcely be contended that the legislature intended that a sale of merchandise in bulk, if otherwise unimpeachable, may be impeached by one who, with knowledge of it, afterwards becomes a creditor of the seller, or that if an existing creditor, who has been duly notified of the proposed sale, encourages or assents to it, he may afterwards have it set aside upon proof that some of the other creditors were not duly notified. We cite these illustrations to show some of the absurd results that would flow from giving to the words, "the creditors of the seller," the most comprehensive meaning possible, and thus holding that, in determining whether any person has standing to attack the sale, every other fact must be ignored excepting that he is a creditor. It is possible, and not at all improbable, that a purchaser, in good faith, of a large stock of merchandise in bulk, might, through the inadvertence of his agent employed to give notice to all the creditors, fail to give notice to one creditor holding a trifling claim, and that no one but that person was prejudiced by the omission. The statute enables him to enforce his demand against the goods, for the mandate is that notice shall be given to each of the creditors, and the smallness of a creditor's claim cannot affect his right. But to hold that it enables the other creditors to take advantage of the omission would seem to press the words, "the creditors of the seller," beyond their necessary meaning, and to accomplish a harsh result that the legislature did not intend. The literal construction of a statute has, in general, but a prima facie preference. And where it appears that the

mischief and the remedy contemplated warrant and require a construction according to the narrower, instead of the broader meaning that may be attached to the words, that construction should be adopted. The effects and consequences of the proposed construction of a law, as well as its reason and spirit, will be looked into in determining the legislative intent, which is the criterion by which all acts must be construed. The cases are numerous in which the words of the statute, though general, have been given a limited construction, if necessary, in order to carry out the intent of the law. As was said in Big Black Creek Improvement Co. v. Commonwealth, 94 Pa. 450, here, if anywhere, the rule should apply, that "statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and, where discovered, it ought to be followed with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute." See, also, Turbett Twp., Overseers of the Poor, v. Port Royal Boro., Overseers of the Poor, 33 Pa. Superior Ct. 520, and cases there cited. "Language is rarely so free from ambiguity as to be incapable of being used in more than one sense; and to adhere rigidly to its literal and primary meaning in all cases would be to miss its real meaning in many. If a literal meaning had been given to the laws which forbade a layman to lay hands on a priest, and punished all who drew blood in the street, the layman who wounded a priest with a weapon would not have fallen within the prohibition, and the surgeon who bled a person in the street to save his life would have been liable to punishment." Endlich on Interpretation of Statutes, sec. 25. The use of the term "creditors" in the phrase of the statute above quoted, was to distinguish between creditors and other persons, that is, to show that the sale is not fraudulent and voidable as to every person, but only as to creditors. It is, therefore, not denying effect to the words, to inquire into the question whether,

under the circumstances, the particular creditor attacking the sale has standing to do so. We conclude, without further elaboration, that the proper construction of the statute does not require it to be held that the failure to give notice to one creditor will, of itself, make the sale fraudulent and voidable as to the creditors who were properly notified.

The sale was consummated on April 16. The defendants did not attempt to impeach the sale by levying upon the goods, until more than three months thereafter. This would seem to be an insuperable obstacle to their right to avail themselves of the provisions of the act of 1905; for the statute declares that no proceedings at law or equity, shall be brought against the purchaser to invalidate any such voidable sale, after the expiration of ninety days from the consummation thereof. It is conceded, however, that this objection was not raised in the court below in any way. Therefore, we do not reverse the judgment on that ground, but upon the grounds previously stated.

Judgment reversed and venire facias de novo awarded.