## Fibre Yarn Co., Inc., v. Tiberio; Saracenyi, Garnishee.

*Sales in bulk—Proceedings against purchaser—Ninety days' limit—Act of May 23, 1919.*

The limitation contained in the proviso of the 3rd section of the Sales in Bulk Act of May 23, 1919, P. L. 262, that "no proceeding at law or equity shall be brought against the purchaser to invalidate any such sale after the expiration of ninety days from the consummation thereof," runs from the date of the consummation of the sale, and not from the time the creditor first had knowledge of it, unless such want of knowledge on the part of the creditor was due to the fact that the transaction was actually concealed from him in some way by the vendor.

Rule on garnishee for judgment for want of sufficient answer. Municipal Court, Phila. Co., March T., 1922, No. 236.

*E. E. Dicker*, for plaintiff; *Harry S. Abrams*, for garnishee.

LEWIS, J., June 29, 1922.—On April 8, 1922, the plaintiff recovered judgment against Emil Tiberio, trading as the Ideal Hand Embroidery Company, in the sum of $357.08.

On May 17, 1922, an attachment *sur* judgment was issued and Joseph Saracenyi was summoned as garnishee.

On the same date interrogatories were filed to the garnishee, who in his answers, among other things, stated that on Oct. 18, 1921, he "bought the Ideal Hand Embroidery Company's business from the defendant," and that he "bought said business on the above date and paid the full consideration therefor, receiving a bill of sale from the defendant," and that he "was not notified by any creditors, and, therefore, did not notify them, nor did any creditors of the defendant notify" him "within ninety days of any indebtedness due them from the defendant."

The seventh interrogatory which was filed, to which the garnishee answered "yes," is as follows: "Q. Did you, or did you not, on or about Oct. 19, 1921, or at any time, purchase from Emil Tiberio the business conducted under the trade name of Ideal Hand Embroidery Company, located at No. 1846 South 15th Street, Philadelphia, or elsewhere, in bulk?"

On May 29, 1922, the plaintiff entered a rule on the garnishee for judgment for want of a sufficient answer. The amount for which judgment is demanded is not stated in the rule. The questions presented for determination are as follows:

1. Is an attachment *sur* judgment a proper remedy for questioning the validity of a sale in bulk?

2. Assuming that the procedure in this case is proper, and assuming, further, that the plaintiff is entitled to judgment, is the garnishee liable for the full amount of the plaintiff's judgment?

3. Can judgment be entered at all, in view of the fact that action against the garnishee was instituted more than ninety days after the date of the alleged sale by the defendant to the garnishee?

Taking up the last question presented for determination first:

"Statutes regulating the sale and purchase of goods in bulk are of comparatively recent origin. Yet so rapidly have they spread that now they are on the statute books of a large proportion of the states of the Union. Of course, the provisions vary somewhat, but there is a very close similarity in the wording of most of them, and the provisions in all have but the one aim—to prevent a sale of goods in bulk until the creditors of the seller have been paid in full. In general, these statutes provide that the sale of all or any portion of a stock of merchandise otherwise than in the ordinary course of

trade shall be fraudulent and void against creditors of the seller, unless the seller delivers to the purchaser a list of his creditors, and the purchaser, in turn, notifies such creditors of the proposed sale a stipulated time, usually five days, in advance. But some statutes are a little broader and include within the prohibition fixtures used in the business. These acts are in derogation of the common law and of a person's right to alienate his property without restriction, and are, therefore, to be strictly construed. The invalidity in any case applies only to cases where the rights of creditors are involved, and sales in violation of the statutes are perfectly valid between the immediate parties or those claiming under them. Though the word 'void' is used in the statute, in legal effect it means voidable at the instance of an attaching creditor. The intent of the parties has no bearing under these statutes:" 12 Ruling Case Law, § 54, page 522.

In the enactment of the statute in question, the legislature furnished no evidence of an intention to establish a new rule for the collection of debts in cases of conveyance of property by debtors, which are merely fraudulent in law but not in fact. The intention was to apply the doctrine of constructive fraud to sales of personal property under certain circumstances which before had been regarded as valid sales. The statute was designed to extend the doctrine, but not to affect or increase the remedies that have been applied in cases of constructive fraud as contrasted with cases of actual fraud.

The Act of March 28, 1905, P. L. 62, provided that a sale in bulk of a stock of merchandise or fixtures otherwise than in the ordinary course of trade shall be deemed fraudulent and voidable as against the creditors of the seller, unless the purchasher shall in good faith and for the purpose of giving notice therein required make inquiry of the seller and receive from him a list in writing and the places of business of each of his creditors, and unless the purchaser shall at least five days before the consummation of the sale give notice of the proposed sale to each of the creditors of the seller appearing on the list, and provided, furthermore, "That no proceedings at law or in equity shall be brought against the purchaser to invalidate any such voidable sale after the expiration of ninety days from the consummation thereof." The provision of section 3 of the Act of May 23, 1919, P. L. 262, is as follows: "And provided, further, that no proceedings at law or equity shall be brought against the purchaser to invalidate such sale after the expiration of ninety days from the consummation thereof."

Construing these provisions, which are practically identical, Rice, P. J., in Ritter v. Wray, 45 Pa. Superior Ct. 440, 449 (1911), said: "The sale was consummated on April 16th. The defendants did not attempt to impeach the sale by levying on the goods until more than three months thereafter. This would seem to be an insuperable obstacle to their right to avail themselves of the provisions of the Act of 1905, for the statute declares that no proceedings at law or equity shall be brought against the. purchaser to invalidate any such voidable sale after the expiration of ninety days from the consummation thereof."

In Swanson v. Terwilliger, 17 Dist. R. 11, 13 (1907), it was held: "The sale was good as against the seller and as against all the world except creditors, and can only be avoided by them upon compliance with the provisions of the statute. If they fail to commence proceedings against the purchaser to invalidate the sale within a statutory period of ninety days, they cannot afterwards be heard to question its validity. In this case such proceedings were not commenced against the purchaser within the time limited by the statute."

1 D. & C.

Fibre Yarn Co., Inc., *v.* Tiberio; Saracenyi, Garnishee.

In Neumeyer *v.* Mayers, 11 Dauphin Co. Reps. 134, 18 Dist. R. 843, McCarrell, J., said: "Proper proceedings at law to invalidate the sale would have been by attachment under the Fraudulent Debtors Act of 1869, or by issuing a *fi. fa.* against Clayton L. Neumeyer, and the seizure of the goods transferred by the sale. As neither of these methods of procedure was attempted in this case until long after the expiration of the ninety days' limit fixed by the proviso of the Act of March 28, 1905, we are clearly of the opinion that the sale must, so far as the present issue is concerned, be entirely valid."

In Simes *v.* Knight, 25 Lanc. Law Rev. 44, the court held: "The evidence as produced showed that possession of the goods was taken on April 22, 1905, by the plaintiff in the issue. The attachment proceedings were not instituted until July 25, 1905. More than ninety days had intervened between those dates, and if it is considered that the sale took place on April 22, 1905, the Act of 1905 cannot be invoked, for the proviso expressly declares that no proceedings at law or in equity can be brought against the purchaser to invalidate any such sale after the expiration of ninety days from the consummation thereof."

In Jenkins *v.* Maginnis, 57 Pitts. L. J. 301 (1909), it was held that the ninety days ran from the completion of the act of selling.

It will, therefore, be seen that, so far as the immediate parties to the transaction are concerned, *i. e.*, as between the vendor and the vendee, the sale in bulk is perfectly valid, and it is only when the rights of creditors intervene that the sale is void in the sense that a creditor can attack the sale on the ground of non-compliance with the provisions of the act.

As was said in Jenkins *v.* Maginnis, 57 Pitts. L. J. 301 (1909): "It is clear that this writ of *fieri facias,* if finally executed, will invalidate said sale from the defendant to said Deasy, so far as the plaintiff in this writ is concerned. This proceeding is, therefore, not being prosecuted against said 'purchaser' for the purpose of invalidating a 'voidable sale.' Was the proceeding instituted against him within the period of ninety days from the consummation of said sale, as required by the proviso to section 1 of said statute?

"The words of this proviso amount to an express prohibition of proceedings against a purchaser to invalidate such a sale after the expiration of ninety days. The statute confers rights upon creditors which did not theretofore exist. Prior to its passage such a sale could not have been invalidated for any or all of the causes therein enumerated. Therefore, in order to avail themselves of the benefits given by the statute, creditors are obliged to proceed in accordance with its terms and within the period limited in the proviso. In other words, such a sale is left valid as between the parties, just as it would have been theretofore, but it is made voidable as against creditors if the parties have not observed the requirements of the statute, provided such creditors proceed against the purchaser within the time limited, but not afterwards. It would be most unreasonable not to require such a creditor to proceed promptly in such a case."

Counsel for the attaching creditor in the case at bar has cited Wilson Brothers *v.* Fields, Inc., 21 Luzerne Legal Reg. 384 [1 D. & C. 673], which holds that the limitation of ninety days for suit by a creditor under the Bulk Sales Act of 1919 begins to run, not from the date of sale, but from the time the creditor first has knowledge of it.

While this decision is entitled to considerable weight, we are compelled to differ from the conclusion reached, and rather to adopt the reasoning of Chief Justice Mitchell in Smith *v.* Blachley, 198 Pa. 173 (1901), as follows: "It is

said in general that in an action based upon fraud the statute of limitations will run from the date of the fraudulent act complained of, unless such fraud has been actually concealed by the defendant."

Certainly it is no hardship for a creditor, within a period of ninety days, to assert his rights under the provisions of the Bulk Sales Act. On the other hand, if the beginning of the ninety-day period is to be determined solely by the time when the creditor first has knowledge of the sale, no purchaser in a sale in bulk would receive the protection which the act in question intended to give him. If the interpretation contended for by the judgment creditor were to be adopted, the meaning of the plain words of the act would have to be strained considerably.

We are, therefore, of the opinion that the ninety-day limitation begins to run when the transaction is, as between the vendor and the vendee, complete, *i. e.*, when the sale between the parties is consummated. It thus becomes unnecessary to discuss the other questions involved in this case.

The rule for judgment is discharged.