## Leinenbach's Petition

*Harry W. Lightstone*, for petitioner.
*W. G. Triebly* and *L. E. Enterline*, for respondents.

GANGLOFF, P. J., July 22, 1935.—According to the allegations of the petitioner, Jacob J. Leinenbach, the Federal Government, sometime in 1930, while petitioner was serving a sentence in the Federal prison at Trenton, N. J., for violation of the eighteenth amendment, made certain claims against him for income taxes alleged to be due from him for the years 1924 to 1929, inclusive; and on or about September 24, 1930, "feeling that he would be compelled to make some payments to the Federal Government and incur other expenses in settling his income tax difficulties, he thought it advisable to make available some assets for such purposes and prevent such assets from being dissipated or expended in connection with any business ventures in which your petitioner had

financial interests", and delivered through Margaret Leinenbach, his wife, as his agent, to George F. Rentz, cashier of The Ashland National Bank of Ashland, Pa., "4 Roxy Bonds, nos. 7, 8, 9, and 10, each in the sum of $5,000 to be held by the said respondent bank, in trust however for the purpose or purposes of being available for the settlement of the aforesaid income tax claims being pressed against your petitioner by the Federal Government". The petitioner states that on or about September 24, 1930, he "thought it advisable" to act as above indicated, but the petition does not specifically fix that date as the day on which the bonds were delivered and the agreement entered into with the bank. However, the petition plainly conveys the impression that he "thought" and acted on the same day.

The petitioner further alleges that he engaged J. L. Krupshaw as his counsel in Washington, D. C., upon an agreed fee of $2,500, payable "when and if the said J. L. Krupshaw, Esq., 'was able to furnish said bank with a letter from the United States Treasury Department indicating that the treasury department had accepted Jacob J. Leinenbach's offer of compromise covering all his civil liability and eliminating all criminal liability growing out of the Government's claim for income tax for the years 1924 to 1929, inclusive' ", and that on or before December 9, 1931, the petitioner instructed Cashier Rentz of the respondent bank "to set aside one of the above-mentioned Roxy bonds to be held in escrow, to assure the payment" to J. L. Krupshaw, Esq., of the said agreed fee of $2,500, "when and if" the said counsel furnished the bank with the letter from the United States Treasury Department showing acceptance of the compromise offer.

The petitioner further alleges that the treasury department has compromised his income tax liability for the years 1924 to 1928, inclusive, leaving 1929 still open; that on January 3, 1933, the petitioner, in the presence of said George F. Rentz, paid to said Krupshaw the sum

of $1,000 in cash in part payment of the fee of $2,500, leaving $1,500 still due and payable if and when Krupshaw presents proof of a compromise with the United States Treasury covering "all of the petitioner's civil liaability and eliminating all criminal liability growing out of the Government's claim for income tax for the year 1929". This proof, he alleges, has not been furnished; however, petitioner alleges that Cashier Rentz "did pay to a certain Mr. H. H. Caro the sum of $1,750 and now claims an interest in the said $5,000 bond by reason of such payment".

Finally petitioner alleges that all of the Roxy bonds are still in the possession of the respondent bank; that the bank has refused, upon demand made, to pay to petitioner the sum of $1,500 interest claimed to be due on said bonds as of October 1, 1933, as well as interest which may have become due since then, and has refused, upon demand made, to render an accounting of the alleged trust "but merely furnished a statement attached hereto and marked exhibit A, which appears to indicate that the respondent bank has appropriated or converted the trust property for other than trust purposes"; and prays that the bank be removed as trustee (1) because of failure to exhibit an account, (2) because it is "wasting or mismanaging" the trust property and (3) because the alleged trustee's individual interests are hostile to the trust, citing as authority for jurisdiction section 9 (n) of the Orphans' Court Act of June 7, 1917, P. L. 363, as added by the Act of June 26, 1931, P. L. 1384; and also section 53 (a) of the Fiduciaries Act of June 7, 1917, P. L. 447.

A citation (erroneously called a rule in the pleadings) was issued directed to The Ashland National Bank "to show cause why it should not be removed as trustee of, and made to account for, the property mentioned in the above petition". Both George F. Rentz and J. L. Krupshaw were subsequently added as parties respondent and each was duly served with notice of the proceedings.

Respondent bank and George F. Rentz filed a demurrer and an additional demurrer, raising preliminary objections to the petition. Demurrers having been abolished in our practice, we shall treat the replies of the respondent bank and Rentz as answers. These answers raise questions of law and contend that: (1) The court lacks jurisdiction "there being no fact or facts alleged in the petition which show the creation of a trust inter vivos"; (2) the petition is defective upon its face for the reason that it fails to set forth facts with such preciseness or accuracy as will show the creation of a trust inter vivos; (3) the petition fails to show the terms or agreement creating the alleged trust inter vivos; and (4) the petition fails to show whether the proceeding is directed against George F. Rentz individually or in his representative capacity as cashier of The Ashland National Bank of Ashland, Pa.

Jurisdiction lies, if at all, under the provisions of section 9 (n) of the Orphans' Court Act of 1917, added by the Act of June 26, 1931. This section extends the jurisdiction of the orphans' court to "the control, removal, discharge, and settlement of accounts of trustees of trusts inter vivos". Prior to passage of this amendment jurisdiction in this class of cases was in the court of common pleas: Von Storch's Estate, 273 Pa. 383; Douglas' Estate, 303 Pa. 227. Since enactment of this section, jurisdiction of the orphans' court over trusts inter vivos is concurrent with that of the court of common pleas: Schwartz v. Schwartz, 316 Pa. 318.

Therefore, if the agreement alleged to have been entered into between the petitioner and the bank established a trust relation, and the trust is a trust inter vivos such as contemplated by the Act of 1931, the orphans' court has jurisdiction. We infer that the agreement, if it was made as alleged, is a parol agreement, at least there is nothing in the petition to indicate otherwise. A trust as to personality may be established by parol: Maffitt's

Admr. et al. v. Rynd et al., 69 Pa. 380; Dickerson's Appeal, 115 Pa. 198; Rocks et al. v. Sheppard, 302 Pa. 46.

As is well known, trusts are divided in reference to their creation into express trusts, implied trusts, resulting trusts, and constructive trusts. A trust may be defined as a fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another: Bogert on Trusts and Trustees (1935), sec. 1. Again, as defined by the Supreme Court in Vosburgh's Estate, 279 Pa. 329, at page 332: "A trust is a relation between two persons, by virtue of which one of them as trustee holds property for the benefit of the other. The term 'trust' is a very broad and comprehensive one. Every deposit is a trust, except possibly general bank deposits; every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied as well as when not so applied. 'The cases of hirer and letter to hire, borrower and lender, pawner and pawnee, principal and agent, are all cases of express trust' [citing authorities]. . . . There must be sufficient words to raise a trust, property to be subject to it, and a purpose to be accomplished." Then again, to create a trust as to personalty the burden is on plaintiff to furnish proof by evidence, clear, precise and indubitable: Rocks et al. v. Sheppard, supra.

Leinenbach admits that he owed something to the Federal Government on account of income taxes, when he entered into the alleged agreement, for he says "feeling that he would be compelled to make some payments to the Federal Government . . .". In other words, he treated the Federal Government as a creditor. In order to protect this creditor and at the same time "prevent such assets from being dissipated or expended in connection with any business ventures in which your petitioner had financial interests" he delivered certain bonds (personal property) to the respondent bank. The bank accepted them. There is no denial of that fact. Whether

petitioner then had other creditors is not disclosed although the contents of exhibit A, attached to the petition, would indicate that he had. At any rate, he delivered the bonds to the bank, on or about September 24, 1930, under instructions that the bank should hold them as a fund for payment of any income taxes found due for the years 1924 to 1929, inclusive, and for payment of expenses incident to settlement of these taxes. Just how payment was or is to be made, upon whose request, or what proofs were to be produced to show authority for payment, does not appear. However, over a year later the terms of the alleged parol agreement were modified, again, we assume, by parol agreement, whereby one of the bonds was set apart to pay an obligation contingently due his counsel, J. L. Krupshaw, the amount being fixed at $2,500. This obligation, contingent it is true, was for services rendered and to be rendered by his counsel in connection with the tax claims. Payment was to be made only upon production by his counsel of a letter from the United States Treasury Department showing acceptance of an undisclosed offer of settlement covering Leinenbach's civil and "criminal liability". This letter has not been produced up to the present time, although part settlement of the income tax liability and part payment of the attorney's fees have been consummated.

Under the pleadings as they now stand we must necessarily assume that petitioner's allegations are true. Respondents, in substance, merely deny the existence of a trust inter vivos, and from this they obviously conclude and allege lack of jurisdiction in this court.

We cannot escape the conclusion that a trust relation was created when the bonds in question were delivered to the bank for the purposes mentioned in the petition: Vosburgh's Estate, supra; Lawrence et al. v. Godfrey, 296 Pa. 474; Wallace's Estate, 316 Pa. 148.

This brings us to the controlling question: Is the trust a trust inter vivos such as is contemplated by the Act of 1931?

Section 3 of the Act of June 4, 1901, P. L. 404, provides, inter alia, that an assignment by a debtor of a portion of his property in trust, for the benefit of his creditors, or any of them, *however expressed*, shall be deemed an assignment of the whole estate, and, furthermore, "a debtor may assign any part of his estate to certain creditors, or in trust for them, if at the time of so doing he be solvent, or the same be not in contravention of the other provisions of this act."

It is quite evident, in the case at bar, that the petitioner assigned, if not all, at least part of his property, to the bank in trust for at least one of his creditors and later on extended the terms to include another creditor. The question as to whether this assignment inured to the benefit of all of the assignor's creditors is not before this court. The fact that the assignment was not recorded does not affect the question now before the court: Huff's Estate, 299 Pa. 200. In the latter case, the assignor held a life insurance policy upon his own life and before his death and while insolvent changed the beneficiary so that the proceeds of the policy became payable to a trustee for two of decedent's creditors. The court held that the change in beneficiary created a trust for the protection of certain favored creditors and inured to the benefit of all of the creditors of insured.

A creditor is one who has a definite demand against the estate, or a cause of action capable of adjustment and liquidation upon a trial: In re Reading Iron Works, 150 Pa. 369. Under the Act of 1901, supra, by creditors is meant those to whom a person, firm, partnership, joint stock company, or corporation, is indebted, whether the debt is due or not; and the word "debt" as used by the Act of 1901 is not limited in its meaning to a debt immediately and unconditionally due, but includes a debt due in præsenti and payable in future: Brock's Assigned Estate (No. 1), 312 Pa. 7. Certainly the Federal Government was one of petitioner's creditors at the time the trust was created and likewise Krupshaw was a creditor,

contingent it is true, at the time he was included as a beneficiary of the trust.

In short, then, the delivery by Leinenbach of the Roxy bonds to The Ashland National Bank, to be held by the latter as a fund out of which to pay the Federal Government, and later on J. L. Krupshaw, was in legal effect an assignment of personal property in trust for the benefit of certain creditors. This, of course, is a trust among living persons, but it is governed by the provisions of the Act of 1901. Jurisdiction under the latter act is in courts other than the orphans' court. There is nothing in the Act of 1931 to even suggest that trusts for the benefit of creditors are included in the term "trusts inter vivos".

When the legislature in 1931 extended the jurisdiction of the orphans' court to trusts inter vivos, did it intend to include all trusts inter vivos or only such trusts as are cognate to the work of that court? If it intended to include all trusts inter vivos, why did it add section 9(o) to the Orphans' Court Act of 1917 specifically extending jurisdiction to life insurance trusts?

Original jurisdiction of the orphans' court is entirely statutory and it possesses and exercises only such powers as are conferred upon it expressly or by necessary implication: Watson's Estate, 314 Pa. 179. Section 9, with its subsections, of the Orphans' Court Act of 1917, as amended, clearly outlines this jurisdiction, and in addition there is the jurisdiction conferred under the Adoption Act of April 4, 1925, P. L. 127, and under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, but under the latter act the orphans' court can render declaratory judgments only on matters within its jurisdiction. In substance, this statutory jurisdiction conferred upon the orphans' court is confined to adoptions; minors and their estates; testamentary trustees; trustees for persons interested in the estate of any decedent; trustees for absent persons; executors and administrators; distribution of decedents' estates; sale of real estate of decedents for payment of debts; disposition of

the title to real estate of decedents and of persons disabled from dealing therewith; partition of real estate of decedents; specific execution of contracts made by decedents to sell and convey real estate; collection and payment of legacies; discharge of lien of debts of decedents and lien of legacies, annuities, etc.; all cases where executors, administrators, guardians or trustees are possessed of or accountable for real or personal property of a decedent, all appeals from orders or decree of the register of wills, and proceedings removed therefrom by certification; and, finally, as already stated, trusts inter vivos and life insurance trusts.

The special field of the orphans' court is thus rather plainly apparent. There is nothing in the Act of 1931 to indicate an intention on the part of the legislature to extend the jurisdiction of that court beyond its special field. Every statute is to be construed with reference to object to be accomplished, even to extent of restraining the meaning of general terms in order properly to interpret the reason of the statute; and a thing which is within the letter of the statute may not be in fact within its meaning because not within the intention of its makers: Citizens Electric Illuminating Co. v. Lackawanna & Wyoming Valley R. R. Co., 255 Pa. 176. In determining legislative intent, the effect and consequences of the proposed construction of act, as well as its reason and spirit, will be examined, and where it appears the mischief and remedy contemplated require construction according to narrow instead of broad meaning of words, such construction will be adopted: Ritter v. Wray, 45 Pa. Superior Ct. 440.

A trust for the benefit of creditors, unless it is in fact a life insurance trust, does not lie within the special field of the orphans' court. The objective of the legislature in enacting the amendments of 1931 was, we believe, to correct such situations as arose in Douglas' Estate, supra, Berkey's Estate, 102 Pa. Superior Ct. 306, and Althouse's Estate, 23 Berks 192. See also Reading

452

National Bank & Trust Company's Account, 22 D. & C. 654.

We accordingly conclude that this court is without jurisdiction in this matter and the objection to its jurisdiction must be sustained.

And now, July 22, 1935, the petition is dismissed for want of jurisdiction.