# WHEELING.

## STANSBURY *v.* STANSBURY'S ADM'RS.

Submitted June 8, 1882—Decided July 1, 1882.

1. When an objection is made to the introduction of evidence on the trial of a case before a jury and overruled by the court, and no exception is taken, an Appellate Court will regard such failure to except as a waiver of the objection. (p. 27.)

2. Where a paper is offered in evidence to the jury, and a general objection is made to its being read, and the objection is overruled, this court will not hold such ruling to be error, if such paper could be properly read as evidence for any purpose. (p. 27.)

3. The burden of removing the bar of the statute of limitations by a new promise rests upon the defendants; and an acknowledgment or admission, to have that effect, must not only be unqualified in itself, but there must be nothing in the attendant acts or declarations to modify or rebut the inference of willingness to pay, which naturally and *prima facie* arises from an unqualified admission. If the acknowledgment be coupled with terms or conditions of any kind, a recovery cannot be had, unless they are fulfilled. (p. 29.)

4. As between parents and an adult child, whenever compensation is claimed in any case by either against the other for services rendered, it must be determined from the particular circumstances of that case, whether the claim should be allowed or not. There can be no fixed rule governing all cases alike. In the absence of direct proof of any express contract the question always is, can it be reasonably inferred, that pecuniary compensation was in the view of the parties at the time, when the services were rendered; and that depends upon all the circumstances of the case, the relation of the parties being one of the circumstances. (p. 30.)

Writ of error to a judgment of the circuit court of the county of Brooke rendered on the 21st day of March, 1879, in an action in said court then pending, wherein Abraham H. Stansbury wasplaintiff and Nicholas Stansbury's administrators were defendants, allowed upon the petition of said defendants.

Hon. T. Melvin, judge of the first judicial circuit, rendered the judgment complained of.

SNYDER, JUDGE, furnishes the following statement of the case:

This was an action of assumpsit brought December 15, 1877, in the circuit court of Brooke county by Abraham H. Stansbury against the administrators of Nicholas Stansbury, deceased, to recover three thousand dollars for services. The declaration consists of the common counts in assumpsit. The defendants filed the pleas of *non assumpsit* and the statute of limitations, to which the plaintiff replied generally, and also filed a special replication to the plea of the statute of limitations. This replication is without any conclusion; and no rejoinder was filed thereto nor issue joined thereon. In September, 1878, the case was tried by a jury, and a verdict found for the plaintiff for one thousand six hundred and fifty seven dollars and fifty cents. The defendants moved the court to set aside said verdict and grant them a new trial, which motion the court at the next March term overruled and rendered judgment on the said verdict against the defendants personally and not as administrators.

During the trial the defendants took two several bills of exceptions, one of which contains all the facts proved by the plaintiff and also those proved by the defendants, and the other gives all the evidence heard on the trial. These bills show, that there was much conflict in the testimony given on the trial as to some of the facts in the case. It is sufficient here to state, that they show, that the plaintiff was the son of the defendant's testator; that he was born in May 1844, and from infancy to the death of his father in December, 1876, he made his home with and worked for his father on his farm in Brooke county, and received nothing for his services

except his board, clothing and a very small amount of pocket-money; that he and his brother Elisha had the active management of and did most of the work on the farm, and that neither of the other children of the testator did much work on the farm; and that the plaintiff was a good hand to work. The evidence of the value of his services was conflicting. Two of the witnesses stated, that his services were worth from twenty-five to thirty dollars per month with lost time and clothes; another put them at an average of sixteen dollars per month; and another at twenty dollars per month with boarding, but if allowed for lost time and washing, one half of this should be deducted, and if ordinary clothing were furnished, it would take nearly the other half. The plaintiff offered to read in evidence the will of the said Nicholas Stansbury; and the defendants objected, but the court overruled said objection, and said will was read to the jury. It is dated February 10, 1875, was duly admitted to probate by the county court of Brooke county on the 12th day of February, 1877, and is as follows:

"I, Nicholas Stansbury, being in reasonable health of body and of a sound and disposing mind, knowing the uncertainty of life and the certainty of death, do make this my last will and testament, and first—I desire that all my funeral expenses and just debts shall be paid, and I appoint my sons, Daniel B. Stansbury, John W. Stansbury and Elisha Stansbury, my executors. To my son Elisha I give the north end of my farm by a line understood between the Walker brothers, including the stable to be taken off the south end of the land surrounding the stable to be taken off the south end of the farm, and Abraham Stansbury to have the privilege of using fruit from the orchard for family use for a term of ten years, also to have the privilege of taking coal for the use of his family without limit; and to my son Abraham H. Stansbury, I give the south end of my farm by the same division line as that of Elisha above mentioned and the reservations made from Elisha in the orchard and coal. I value my farm at seventeen thousand six hundred dollars. Divided as above between said Elisha and Abraham, each division of the land valued at eight thousand eight hundred dollars, giving Elisha four thousand dollars for services rendered, leaving a balance

of four thousand eight hundred dollars, and to Abraham eight thousand eight hundred dollars in the value of the land, three thousand dollars for his services rendered, leaving a balance of five thousand eight hundred dollars; and I give to my sons, Elisha Stansbury and Abraham H. Stansbury, all of my farm stock and implements, grain on sarm, growing and otherwise, and the said Elisha Stansbury and Abraham H. Stansbury are to take special care of my beloved wife, Rebecca Stansbury, their mother, during her natural life, and give her a decent burial when dead; and to my daughter, Dorcas Stansbury, I give a home with her brothers and mother as long as she may remain with and take care of her mother; and to my children, Daniel B. Stansbury, Joseph Stansbury, Elisha Stansbury, Sally Scott, John W. Stansbury, Dorcas Stansbury, Samuel Stansbury, Abraham Stansbury, and to my granddaughter, Rebecca Wright, I give unto the above-named nine persons the sum of three thousand dollars each; and to my daughter, Sarah Scott, I authorize my executors to pay the interest on three thousand dollars annually; and to my son, Samuel Stansbury, I give three thousand dollars, and authorize my executors to pay him the interest thereon annually; and to my granddaughter, Rebecca Wright, I give the interest on three thousand dollars to be paid annually by my executors; and I direct my executors; if the above amounts, as a portion of it is in bonds secured by deed of trust for coal, understood if it has to be collected according to law, the above specified legacies to be in proportion, whether it makes more or less money, and in the above legacies, where interest only is directed to be paid, if my executors think it best to invest the principal in real estate for the use of the legatees, I give them power to do so and stop the interest. Given under my hand and seal this 10th day of February, 1875.

"NICHOLAS STANSBURY. [SEAL.]"

The executors named in the will declined to act; and the defendants, James F. Watt and George McWha, qualified as administrators with the will annexed. There was also some evidence tending to show, that about the time the plaintiff arrived at his majority, his father said to him, that if he would stay with him, he would pay him for it; and the plain-

tiff said he would stay; but this was contradicted by other testimony, and this Court cannot say, whether said evidence establishes an agreement to pay for services or not. There was also other testimony; but for the purposes of this opinion it is not material to state it.

After the jury returned their verdict, the defendants moved the court to set aside the same and grant them a new trial, upon the ground that the verdict was contrary to the evidence, which motion the court overruled, and the defendants excepted.

The case was brought to this court on the petition of the defendants.

*R. G. Barr* for plaintiff in error cited the following authorities: 8 Gratt. 110; 13 Gratt. 329; 1 Smith Lead. Cas. 953; Id. 961; Code ch. 104 § 10; 2 You. & Coll. 208; 3 Hare 281; 1 Nev. & M. 421 (28 E. C. L. 327); 29 Wis. 278; 5 Wis. 472; 22 Wis. 93; 44 Pa. St. 402; 29 Pa. St. 369; 23 Ind. 50; 16 Ill. 296; 41 Mo. 441; 33 N. H. 581; 3 Dev. 348; Wright (Ohio) 134; 17 Vt. 556; 5 Watts & S. 513; 5 Cas. 369.

*G. W. Caldwell* for appellee.

SNYDER, JUDGE, announced the opinion of the Court:

The plaintiffs in error insist, that the circuit court erred in permitting the will of Nicholas Stansbury to be read to the jury over their objection. The record shows, that the defendants objected generally to the reading of said will to the jury, and that said objection was overruled, and the will read; but it does not show, that the defendants excepted to said action of the court.

It is a rule of law generally enforced by this Court, that where an objection is made to the introduction of evidence and overruled by the court, and no exception is taken, such failure to except shall be held to be a waiver of the objection. In this case however, even if an exception had been taken, the action of the court could not be disturbed, because, where a paper is offered in evidence, and a general objection is made to its being read, and the objection is overruled, this court will not treat such ruling as error, if such paper is

proper evidence for any purpose, although, if the grounds of objection had been specified, it might have been the duty of the trial-court to limit the purposes, for which it could be considered as evidence by the jury. Was said will admissible for any purpose? This being an action for services, any evidence tending to show, that services had been rendered, would be competent. The testator in this will states, that he gives the plaintiff "Abraham eight thousand eight hundred dollars in the value of the land, three thousand dollars for his services rendered, leaving a balance of five thousand eight hundred dollars," &c. The language here used by the testator was at least a circumstance, from which the jury might infer, that services had been *rendered* by the plaintiff, for which the testator was still indebted, and therefore was a proper matter to be submitted to the consideration of the jury; and consequently the court did not err in permitting said will to be read to the jury.

It is further insisted by the plaintiffs in error, that the trial-court should have set aside the verdict, because it was contrary to the evidence. Upon the question of the value of the plaintiff's services we have stated the evidence, which was before the jury, and construing it most favorably for the plaintiff, we think it is clearly insufficient to justify the amount of the verdict, unless the will of the testator takes the case out of the operation of the statute of limitations and sustains the allegations of the special replication to the plea of said statute. This action was commenced in December, 1877, and the testator died in December, 1876. Thus there could be but four years' services not barred by the statute. The most favorable view of the testimony could not give the plaintiff more than three hundred dollars per year for his services, making for the four years twelve hundred dollars, which is much less than the amount of the verdict.

Section 10 of chapter 104 of the code provides, that "No provision in the will of any testator, devising his real estate or any part thereof subject to the payment of his debts or charging the same therewith, shall prevent this chapter from operating against such debts, unless it plainly appear to be the testator's intent, that it shall so operate."

The chapter referred to in said sections is that, which pro-

vides for the limitation of actions. The eighth section of said chapter in substance declares, that upon any contract the right of action shall not be barred, if the person to be charged shall by writing, signed by himself or his agent, promise the payment of money on such contract within the time prescribed as the limit for an action on such contract; and further declares, that "An acknowledgment in writing as aforesaid, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this section." Under the provisions of these statutes does the will of the testator fairly construed plainly imply such a promise or acknowledgment, as will take the plaintiff's claim out of the operation of the said statute?

The current of modern authority establishes, that the burden of removing the statutory bar rests upon the plaintiff, and that the acknowledgment or admission must not only be unqualified in itself, but that there must be nothing in the attendant acts or declarations of the defendant to modify it, or rebut the inference of willingness to pay, which naturally and *prima facie* arises from an unqualified admission—1 Smith's Lead. Cas. 953–4, and cases cited. "If the acknowledgment be coupled with terms or conditions of any sort, a recovery can not be had, unless they are fulfilled."—1 Smith's Lead. Cas. 961; *Cocks* v. *Weeks*, 7 Hill 45; *Bell* v. *Morrison*, 1 Pet. 351; *Farmers' Bank* v. *Clarke*, 4 Leigh 603; *Aylett* v. *Robinson*, 9 Leigh 45.

In *Abrahams* v. *Swann*, 18 W. Va. 275, it was held, that "To remove the bar of the statute of limitations by a new promise, in writing such promise must be determinate and unequivocal; and if the new promise is to be raised by implication of law from an acknowledgment, there must be an unqualified acknowledgment of a subsisting debt, which the party is liable and willing to pay."

"If the debtor promises to pay the old debt, when he is able, or by instalments, or in two years, or out of a particular fund, the creditor can claim nothing more than the promise gives him."—*Phillips* v. *Phillips*, 3 Hare 300; *Martin* v. *Knowles*, 28 E. C. L. 327.

Applying the principles of these authorities to the language used in the will in question it is apparent, that there

is no such acknowledgment or promise, as will take the claim of the plaintiff out of the bar of the statute. The only part of the will, from which any acknowledgment could be inferred, is the following sentence: I give "to Abraham eight thousand eight hundred dollars *in the value of the land*, three thousand dollars for his services rendered, leaving a balance of five thousand eight hundred dollars." The acknowledgment here is coupled with a qualification, which shows that the debt was satisfied at the same time, that the promise was made. The testator gave the plaintiff certain land, a part of which was expressly given in satisfaction of the very services now sued for. If the plaintiff renounces the satisfaction of the claim provided by the testator, he necessarily repudiates the promise or acknowledgment. The whole must be taken together; and when so taken, there is no acknowledgment of any existing debt, from which a promise of future payment can arise. This construction is made more clear, if possible, by other portions of the will. By it burdens are imposed upon the plaintiff; and the benefits may be more or less according to the value of the estate when finally settled. The intent of the testator as expressed in the will shows, that in the event certain bonds should not be realized, the legacies given were to abate rateably.

Taking the whole will and the evident intent and purpose of the testator as therein expressed, we are of opinion, that it does not contain such an acknowledgement, as will take the claim of the plaintiff out of the operation of the statute of limitations. And, as we have shown, that the verdict cannot be supported upon any theory, which denies such operation, we are of opinion, that the court erred in refusing to set aside the verdict of the jury and grant to the defendants a new trial.

The plaintiffs in error further contend, that nothing but an express contract will entitle a son to recover for services rendered to his father, after he attains his majority; that no implied contract to pay for such services will arise upon proof, that they were rendered. As this question may arise on another trial of this case, it is proper, that this Court should express an opinion upon it.

In the absence of any contract the relation of parent and

child living in the same family would raise a presumption, that no payment was to be made for services rendered by such child to the parent; but this presumption may be overcome by clear and unequivocal proof to the contrary—*Hall* v. *Finch* 29 Wis. 278.

The authorities on this question are not in entire harmony. We think the correct rule is laid down in *Harshberger* v. *Alger* 31 Gratt. 53, 66. It is as follows: "As between parent and an adult child, wherever compensation is claimed in any case by either against the other for services rendered, or the like, it must be determined from the particular circumstances of that case, whether the claim should be allowed or not. There can be no fixed rule governing all cases alike. In the absence of direct proof of any express contract, the question always is, can it be reasonably inferred that pecuniary compensation was in the view of the parties at the time the services were rendered; and that depends upon all the circumstances of the case, the relation of the parties being one."

We have now considered all the errors insisted upon by the counsel for the plaintiffs in error in the argument before this court; but there are two other matters in the record, which it seems proper, that this court should briefly notice, in order that they may be corrected or avoided in any future trial or this case.

As we have seen, the special replication to the plea of the statute of limitations contains no conclusion. This defect is cured in express terms by our statute of jeofails. But the replication being one, which sets up affirmative matter, it must be treated as though it concluded with a verification, and therefore no issue could be made thereon without a rejoinder being filed, which was not done in this case. This irregularity is not in terms cured by the statute of jeofails; and whether or not under the special facts and circumstances or this case it may be held to come within the spirit of said statute, it is not necessary for us now to decide, as the pleadings in this regard can be amended in the trial-court before another trial is had. The question here presented has been considered by this court in the following cases: *B. & O. R. R. Co.* v. *Faulkner* 4 W. Va. 180; *Huffman* v. *Alderson* 9

W. Va. 616; *First National Bank* v. *Kimberlands* 16 W. Va. 555.

The judgment rendered in this case is against the defendants personally, whereas it should have been given against them *de bonis testatoris.* By the provisions of section 5 of chapter 134 of the Code this error could have been corrected on notice by the court which rendered the judgment; or by section six of said chapter it could be corrected and the judgment affirmed by this court, if there had been no other error in the case; and therefore this court would not reverse the judgment for such error.

For the errors herein mentioned we are of opinion, that the judgment of the circuit court of Brooke county entered on the 21st day of March, 1879, should be reversed and annulled. It is therefore considered, that said judgment be and the same is hereby reversed, with costs to the plaintiffs in error; that the motion of the defendants to set aside the verdict of the jury and grant them a new trial be sustained; and a new trial be ordered with leave to either party to amend the pleadings in the case before such new trial is had, the costs of the trial had in the circuit court to abide the issue of the case.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CASE REMANDED.

# WHEELING.

