# CHARLESTON.

## THOMPSON v. HALSTEAD et al.

Submitted January 22, 1898—Decided March 23, 1898.

1. EXECUTION OF INSTRUMENT—*Death of Witness—Handwriting—Evidence.*

   Where a paper purports to have been signed by a party, with a subscribing witness thereto, and such subscribing witness is dead, proof of the handwriting of the subscribing witness is *prima facie* evidence of the execution of the paper; but such evidence may be rebutted by the party denying its execution and by outside circumstances. (p. 396).

2. SUPPORT OF RELATIVE—*Mother-in law—Son-in-law.*

   As between near relatives, such as a mother-in-law and a son-in-law, whenever compensation is claimed in any case by either against the other for services rendered or for board, it must be

determined from the particular circumstances of that case whether the claim should be allowed or not. There can be no fixed rule governing all cases alike. In the absence of any direct proof of an express contract, the question always is, can it be reasonably inferred that pecuniary compensation was in view of the parties at the time when the service was rendered or board furnished? And that depends upon all the circumstances of the case, the relation of the parties being one of the circumstances. (p. 398).

3. TRUSTEES—*Bond—Sale Under Trust Deed.*

    A trustee need not give bond under section 6 of chapter 72 of the Code before advertising and selling the property mentioned in the trust deed unless required to give such bond by the grantor or any *cestui que* trust.     (p. 399).

Appeal from Circuit Court, Mercer County.

Suit by Aden Thompson against Emily Halstead and others for an injunction restraining the sale of certain land. From a decree dissolving the injunction granted, plaintiff appeals.

*Affirmed.*

DOUGLASS & McGRATH, for appellant.

JOHNSTON & HALE, for appellees.

ENGLISH, JUDGE:

On the 13th day of June, 1889, one Aden Thompson executed his note to Emily Halstead, his mother-in-law, for the sum of six hundred dollars, which note stated on its face that it was for a loan received of her in borrowed money, which note was also signed by Celia A. Thompson and Alex Halstead. On the 15th of June, 1889, said Thompson executed to one D. W. McClaugherty, as trustee, a deed of trust on a tract of land containing two hundred and fifty acres, to secure the payment of said note, which deed of trust was duly recorded. Thompson having failed to pay said note, said trustee, on February 6, 1896, advertised said tract of land for sale, and the said Aden Thompson filed his bill in the circuit court of Mercer county, praying an injunction to restrain said trustee from selling said land, alleging in his bill the above facts, and claiming he did not owe Emily Halstead the said six hundred dollars evidenced and secured as aforesaid, or any part there-

of; that at the time of the execution of said note and deed of trust it was distinctly understood and agreed by and between the defendant Emily Halstead and himself that he would not be required to pay back the said sum of six hundred dollars, or any part thereof; that said sum of six hundred dollars was given to him in consideration of his having supported, maintained, and taken care of her, her grandson, Alex Halstead, and her horse,—all at her special instance and request; and for the further consideration of his continuing to support and care for them so long as they should remain at his house, or until the said sum of six hundred dollars should have been taken up in that way. The plaintiff also alleged that he took care of said Emily Halstead, her horse, and Alex Halstead for about two years prior to the date of the execution of said bond and trust deed, and also maintained them from the time of said execution until about the 1st of March, 1894,—altogether about seven years; and that the service rendered by him in maintaining and caring for her, her horse, and said Alex Halstead was at her special instance and request, and such services were worth three hundred dollars per year; that said trustee was proceeding to sell under said trust deed, and would sell said land on the 10th of March, 1896, unless restrained by injunction; that he had long since paid off the six hundred dollars in the manner above set forth, and he prayed said trustee be enjoined and prohibited from selling the land in the bill and exhibits mentioned. On February 24th an order of injunction was awarded in vacation in pursuance of the prayer of said bill, and bond executed as therein required. On February 6, 1896, the defendant Emily Halstead appeared at rules, demurred to plaintiff's bill, and filed her answer thereto, in which she denied the material allegations of the bill, and claimed that her work done for the plaintiff while at his house was worth to him at least one hundred and seventy-five dollars, that the use of her horse was worth three hundred and fifty dollars, and that the services of said Alex Halstead were worth four hundred and eighty dollars; that, if the plaintiff ever had any claim against her for board and matters referred to in his bill, it is long since barred by the statute of limitations, which she pleads, and relies upon;

that he has been guilty of laches in enforcing his claim, if ·
he ever had any, and she relies upon laches as a defense to
his suit, and denies plaintiff's right to recover against her
anything in this suit, and prays that a decree be rendered
therein for the amount due her from plaintiff and the said
sum of six hundred dollars and a sale of the land conveyed
in said trust deed be decreed, and general relief be granted
her therein; and to that extent she asks that her answer
be taken and treated as a cross bill, etc.    To this answer
the plaintiff replied generally.    Numerous depositions
were taken by plaintiff and defendants, and on May 25,
1896, the cause was heard.    The defendant Emily Hal-
stead moved to dissolve the injunction awarded therein,
and the cause, having been regularly matured, was heard
upon the pleadings and proofs, and upon the argument of
counsel.    Upon consideration thereof the court was of
opinion that the plaintiff was not entitled to the relief
prayed for in his bill, and that the same should be dis-
missed, and said injunction dissolved, and also decreed
that the defendant Emily Halstead recover her costs, etc.;
and from this decree the plaintiff obtained this appeal.

The errors relied on by the appellant are as follows: (1)
That the court erred in denying the relief prayed for in
his bill upon the pleadings and proofs in the cause.    (2)
The court erred in dissolving the injunction awarded in
the cause and in dismissing the plaintiff's bill, upon the
pleadings and proofs in the cause.    (3) The court erred
in dissolving said injunction and dismissing said bill with-
out requiring the trustee in said deed of trust to enter
into bond as required by law.    (4) The court erred upon
all questions properly involved in the cause which fully ap-
pear of record therein.

The first, second and fourth of said assignments may be
considered together, for the reason that in determining
either of said assignments it is incumbent upon us to pass
upon the correctness of the decree complained of after an
examination of the case upon its merits.    There is no con-
troversy as to the fact that appellant borrowed the six hun-
dred dollars in the bill mentioned from his mother-in-law,
Emily Halstead, on the 13th day of June, 1889; that he exe-
cuted his note therefor at the time he obtained the money,

and a few days thereafter executed the deed of trust upon his land to secure the payment thereof. The appellant, however, contends that at the time he received the money and executed his note there was an agreement between him and said Emily Halstead that he was not to repay the money. This allegation she denies in her answer, and also denies in her deposition. He further contends that this money was to be retained as compensation for her board, the board of Alex Halstead, and for keeping her horse; which is also denied by Emily Halstead in her answer and deposition. To support this claim of the appellant the burden of proof rests upon him, and the question is, has he sustained it? It is true, the plaintiff makes himself a witness and states that a few days before he got the money Emily Halstead and himself were coming from Raleigh C. H., and she remarked to him that she wanted to let him and his wife have six hundred dollars; that she wished to make her home with them, and wished him to give her a deed of trust on the land, and pay the interest for one year, and they would never have it to pay; that her other children had not treated her well, and by fixing it this way the others would not think hard of her; that after a while she would make a will, and they would never have it to pay; that she would will it to them; she did not want the other children to think hard of her. The plaintiff, Aden Thompson, gave a second deposition in the cause in which he for the first time claimed that he had in his possession written evidence of the fact that he was to have said six hundred dollar note and the deed of trust by which the same was secured to recompense him for his trouble in caring for said Emily Halstead, which written evidence he files as an exhibit with said deposition and reads as follows: "This is to show that Aden Thompson, Jr., is to have the $600 which I hold a note for against him, and also a deed of trust against his land. The consideration of this is to recompense him for his trouble of caring for me and Alex Halstead while at his house. This May the 16th, 1891.

her<br>
Emily X Halstead.   [Seal.]<br>
mark.<br>
Witness:   W. P. Layne."

Now, it must be regarded as somewhat remarkable, if this paper is genuine, that a document of such importance to the plaintiff's case was utterly ignored and overlooked by the plaintiff while preparing his bill, and no mention made of it to his counsel during the preparation of the same, and it contains no reference thereto. It is no less singular that the plaintiff, on March 3, 1896, should give a lengthy deposition in his own behalf, in which he says, a few days before he got the six hundred dollars Mrs. Halstead remarked to him that she wanted to let him and his wife have the money; she wanted to make her home with them; that she wished him to give a deed of trust on the land, and pay the interest for one year, and he would never have it to pay; that she would will it to him. The remainder of this deposition is taken up in attempting to prove his account against said Emily Halstead for the board of herself and grandson and keeping her horse; and when, on cross-examination, he was asked, "When Emily Halstead left your house, and asked you what she owed you for board, why didn't you make off your bill, and settle with her then?" he replied: "From the fact that I thought this arrangement was made in the deed of trust, and also that she was out of humor at the time, and I did not want to have any words with her." What more opportune moment could the plaintiff have desired to speak of having this written release of the six hundred dollar debt in his possession? If such had been the case, what better way to have relieved himself of the labor and odium of charging his mother-in-law with the board of herself and grandson, and in this manner attempt to rid himself of this six hundred dollars. The production of that paper, which appears to have been dated March 16, 1891,—nearly four years before this deposition was taken,—would have shown at once that the six hundred dollars debt and trust were released to recompense the plaintiff for his trouble in caring for Emily Halstead and Alex Halstead while at his house. When the plaintiff was giving his second deposition in this case he was asked, "Why did you not mention and exhibit said writing when your former deposition was taken?" and answered, "Because I had searched for it, and had not been able to find it." If it had been shown that

the paper was lost, he might have proved its contents, but he states that he never mentioned it to his attornoys until the Saturday before his last deposition was taken. He says he told them there was other evidence he was in search of, but did not tell them what it was, or say anything about the paper. The defendant Emily Halstead positively denies the execution of said paper; and, when the plaintiff undertakes to prove the handwriting of the witness Layne, the testimony thereto is conflicting, though the majority express the belief that it is Layne's handwriting. But, conceding that the writing is that of Layne, what is the effect? It is *prima facie* evidence that Emily Halstead signed said paper, but it may be rebutted by other testimony. See Am. & Eng. Enc. Law, 842, note. It is certainly no stronger than if Layne had been in life, and testified that Emily Halstead executed the paper in his presence; and we have, by way of rebuttal, the positive testimony of Emily Halstead that she never made any mark to said paper, and never called on W. P. Layne to witness it, and that she never had any such agreement with Thompson as that contained in said paper. That she spoke the truth in making that assertion is strongly sustained by the circumstances which appear in the record. It is difficult to believe that, instituting this suit, and consulting with his counsel in reference thereto, the appellant would have been silent as to the existence of such paper, and never have mentioned to his counsel the existence of a document which, when proven, would have been of such vital importance in sustaining his claims; and again, when he took the stand in giving his first deposition in support of his bill, if such a paper had ever been executed by the defendant, it seems strange he did not mention it when he went minutely into details, giving the conversation with the defendant, the place on the Raleigh road where the subject of the loan was mentioned, and the time and manner in which the note and deed of trust were executed, and when he states that this paper dated on the 16th day of May, 1891, signed by Emily Halstead, and witnessed by W. P. Layne was executed a couple of years before Emily Halstead left his house. Can it be credited that, when said Emily Halstead left his house, she asked what she owed him for board, if

this paper had been executed by her, and she was aware of the fact that she had, by the terms of said paper, agreed that he should have the note for six hundred dollars and the deed of trust by which it was secured to recompense him for caring for herself and Alex Halstead while at his house? If this paper was genuine, and had been then executed, and in the possession of the appellant, why should she want to know what she owed him for board? The matter was already settled, and he had his pay by the release of this obligation.

There are other circumstances developed by the testimony in the case which cannot be reconciled with the claim of the plaintiff that this six hundred dollar debt was settled and released by the paper he seeks to prove by establishing the handwriting of W. P. Layne, who purports to have been a subscribing witness thereto. The trustee, McClaugherty, testifies that a short time after the advertisement was made the plaintiff, Aden Thompson, told him he was going to make defense to the sale, and stated he had some claims against Emily Halstead for board for herself and Alex Halstead, and for keeping her horse, and asked him if he thought there would be anything wrong in making these charges against her. This conversation remains uncontradicted by the appellant, and yet it is singular that he should have been advising with the trustee as to the propriety of setting up this defense if he already held the release in writing, signed by Emily Halstead, in which these very claims were recited as a consideration for the release of the six hundred dollars debt. Again, some time after the date of the supposed writing, and after Emily Halstead left his house, he told Mrs. Annie Hedrick that he owed Emily Halstead six hundred dollars and would pay it back if she would knock off the interest; that it was just money, and he was willing to pay it all but the interest. He also told Harry E. Fink, after the date of this paper (as appears from the exhibit), that he owed Mrs. Halstead the money, and would pay it every dollar if she would give him time enough; that he was at her mercy, and, if she wanted to ruin him, she could do it. In a subsequent conversation he asked this witness if he did not think he was doing right in making a bill against the old

lady for staying there, and said he would spend all he had or "beat her out of that money." It is perceived at once that these statements, made by the plaintiff to different parties, are utterly inconsistent with the claim of the plaintiff that he was in possession of said paper which purports to be a release, when such declarations and statements were made.

Now, as to the charge made by plaintiff for keeping said Alex Halstead, the evidence shows that the defendant Emily Halstead was in no manner chargeable with keeping her grandson; that the plaintiff and his wife took him when a small boy, and he worked on the farm, making his home with them until he left. Mrs. Halstead also lived there as one of the family, assisting in the housework; and there not only was no contract that she should pay her board, but the evidence shows that when she was leaving the appellant's house he told her he charged her nothing for board. Could he recover on the *quantum valebat?* In the case of *Mariner* v. *Collins*, 5 Har. (Del.) 290, it was held that: "A son-in-law could not recover for board and attendance during the sickness of his mother-in-law, who lived with him as a member of his family." Also, in *Harshberger* v. *Alger*, 31 Grat. 53, that, "as between parent and an adult child, whenever compensation is claimed in any case by either against the other for services rendered, or the like, it must be determined from the particular circumstances of that case whether the claim should be allowed or not. In the absence of direct proof of any express contract, the question always is, can it be reasonably inferred that pecuniary compensation was in view of the parties at the time the services were rendered? And that depends upon all the circumstances of the case, the relation of the parties being one." In the case at bar the appellant, in his deposition, says, when his mother-in-law was leaving his house she asked what her bill was, "and I told her I had made no bill against her." In the case of *Stansbury* v. *Stansbury's Adm'rs*, 20 W. Va., 31, SNYDER, JUDGE, in delivering the opinion of the court, says, "We think the correct rule is laid down in *Harshberger* v. *Alger*, 31 Grat. 53," and quotes with approval the syllabus in that case. It is also assigned as error that the trustee advertised the

property without first giving bond, but said taustee, in his deposition, says he was not required to give bond either by the grantor or *cestui que* trust, and, such being the case, under our statute, no bond was required and this assignment was not well taken. Considering, then, the entire circumstances of this case as shown by the testimony, and applying the law we have cited thereto, my conclusion is that the circuit court committed no error in the decree complained of, and the same is affirmed, with costs and damages.

*Affirmed.*