# Gross's Estate.

*Decedents' estates—Claims against—Evidence—Burden of proof —Monthly payments—Presumption of payment—Partnership— Findings of fact—Orphans' court.*

1. In a claim for services against a decedent's estate, where the claimant could have asserted his rights long before the decedent's death, at a time when there was sufficient money on hand to pay the claim, and when decedent could have defended his rights, the claimant, if he relies on parol evidence, must establish his right by proof direct and positive.

2. In such case the burden of proof is on the claimant.

3. To establish a claim against a dead man's estate is being steadily made more difficult by the courts.

4. Where it appears that the claimant received a certain sum of money each month for services, the presumption is that the payment thus received was in full satisfaction of any demand.

5. Findings of fact by the orphans' court on a claim against a decedent's estate have the force and effect of a verdict of a jury, and will not be disturbed if there is sufficient evidence to support them.

Argued April 20, 1925. Appeal, No. 232, Jan. T., 1925, by Conrad W. Gross, from decree of O. C. Phila. Co., Oct. T., 1923, No. 3462, dismissing exceptions to adjudication, in estate of Christian G. Gross, deceased.

Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Exceptions to adjudication of GEST, J.
The opinion of the Supreme Court states the facts.
Exceptions dismissed in opinion by THOMPSON, J.
Conrad W. Gross, claimant, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Grover C. Ladner,* for appellant.—The word profits, in decedent's agreement with appellant, means all the profit decedent earned by the partnership.

A provision capable of two or more meanings should be construed most strongly against him whose undertaking it is: Van Horn v. Kemena, 281 Pa. 579; Dinger v. Friedman, 279 Pa. 8; Gillespie v. Isman, 210 Pa. 1.

The evidence shows that the action of decedent in his lifetime was consistent with the interpretation here contended for.

*C. J. Hepburn,* with him *Robert Dechert,* for appellee. —The evidence is insufficient to sustain the claim: Peter's App., 106 Pa. 340; Carpenter v. Hays, 153 Pa. 432; Graham v. Graham, 34 Pa. 475; Caldwell v. Taylor, 276 Pa. 398; Goodhart's Est., 278 Pa. 381; Hirst's Est., 274 Pa. 286; Amey's App., 49 Pa. 126.

The uncontroverted evidence establishes an arrangement of quite different nature from that now asserted— and one fully performed in decedent's lifetime.

The presumption is of payment in full: Koecker's Est., 20 Phila. 71; Houck v. Houck, 99 Pa. 552; Flaccus v. Wood, 260 Pa. 161; Bean's Est., 264 Pa. 131; Winfield v. Trust Co., 229 Pa. 530; Cummiskey's Est., 224 Pa. 509.

OPINION BY MR. JUSTICE KEPHART, June 27, 1925:
The decedent and his cousin William were partners in the business of buying and selling live stock under

the firm name of C. Gross & Brother. They succeeded their respective fathers in the same business in 1912. From that date on, each had employed and paid his brother to work in connection with the business. Christian, the decedent, had charge of the inside work, including the bookkeeping. His brother Conrad, the claimant, employed by him as a sales clerk, did the original entry work in keeping the firm books. After Christian's death, Conrad presented a claim against the estate for one-half of what he termed his brother's share of the net earnings of the partnership. It was based on an alleged agreement by which Christian was to pay Conrad this sum as compensation for the services mentioned. At the end of each month the partners divided a certain part of the earnings, Christian giving one-half of the money received from the firm to his brother, by crediting it to an account kept in Conrad's name, and for his benefit. The balance has been paid, since Christian's death. There is no dispute over the monthly division of money received from the firm; the controversy is over Conrad's right to receive one-half the balance of the so-called profits or earnings which were not paid during the partner's lifetime.

The matter, as it thus presents itself, is resolved into a contest against an estate by one who was in a position to assert his rights long before the death of the other party, at a time when there was sufficient money on hand to pay it, and when the other party, the one most interested, was in being to defend his rights. To successfully assert a claim against a dead man's estate is being steadily made more difficult. To establish such claim by parol evidence requires proof direct and positive. The terms of the liability must be certain and definite: Caldwell v. Taylor, 276 Pa. 398, 404; Goodhart's Est., 278 Pa. 381; Hirst's Est., 274 Pa. 286, 288; Reynolds v. Williams, 282 Pa. 148. As we have often said, "These claims are always looked on with suspicion," the burden of proof lies on the claimant: Heffner's Est., 134 Pa.

436, 444. Moreover, appellant is also faced with the proposition that, having received a certain sum of money each month, for services, the presumption would be the payment thus received was in full satisfaction of any demand: McConnell's App., 97 Pa. 31, 34; Houck v. Houck, 99 Pa. 552, 555; Flaccus v. Wood, 260 Pa. 161, 164; Gilbraith's Est., 270 Pa. 288, 290; Winfield v. Beaver Trust Co., 229 Pa. 530; Brown v. McCurdy, 278 Pa. 19, 23.

The surviving partner, in support of the claim, testified to a conversation with Christian, from which appellant argues a contract may be found. The substantial part of the conversation is as follows: "Bill, I want to tell you the arrangement I made with Conrad, my brother. I agreed to give him one-half of my share of the profits,—of the coming profits of the business; that is, of the first profits of the business."

The court below, in disallowing the claim, determined this language to be ambiguous in not clearly expressing the intention of the parties, and that, from the manner in which the books were kept, the profits referred to were not intended to include the earnings not paid, and found that there was not sufficient evidence to sustain an award of one-half of the surplus or earnings account. The profits referred to and here claimed had been set aside in a special account which, at the time of decedent's death, amounted to $63,000, and was used by the firm for a particular purpose. We agree with these conclusions, and, in addition, we find that William, the surviving partner, on whose testimony main reliance is placed, explained with sufficient accuracy the purpose of the special account. In this connection it may be well to state, as having some bearing on the last phrase above quoted from the decedent ("that is, of the first profits of the business"), Christian, in keeping a book which showed Conrad's account also had an account styled "C. Gross & Brother." The entries there made by him clearly distinguished between the earnings of the part-

nership that were paid to him and those that were placed in the surplus account. It further shows that the "first profits" had reference to the profits that were divided at the end of each month.

These circumstances, in connection with William's testimony, explaining the purpose of the special fund, evidence that it was never intended to be used as profits, nor to be understood as such, but was always considered by the partners as being a part of the capital without which the firm's business would be seriously jeopardized. The undertaking of the partners was considered extremely hazardous. At times their profits for a month might be very large, considering of course the character of the enterprise; at other times the firm might suffer a considerable loss. To safeguard against such uncertain and fluctuating conditions, and to protect the partners in their individual estates, it was agreed to create a fund which would automatically take care of such reverses. Accordingly, from the earnings of the company each month or year a certain part was set aside as capital of the company. Christian styled this account "C. Gross & Brother," the firm name. William speaks of it in the following language: "We were doing a very hazardous business at the time, extending our credit very much . . . . . ; we thought it a good thing if we could put some of it to one side and when we had a loss, instead of taking it out of the profits [that is, the money divided each month], we could take it out of that [fund] and in that way we could have no risk." The special fund or surplus account now in controversy was made up of earnings not divided as profits or considered as such. Instead of taking the monthly losses, or any losses that might occur out of the monthly profits (that is, the first profits) that were given to each partner, they would be charged against this fund. In this manner the regular monthly division from the first profits that each partner received was assured to them, and their personal estates would in no event be called on to make good any such

loss. Indeed, if claimant's idea was carried out, he would be free from replacing any loss that might occur. In other words, he would participate in the gain, and not share in any loss. Again, William's explanation refers with much force to the statement, "first profits of the business."

It must have been apparent to the auditing judge that when Conrad presented his original bill against the estate for the balance of the monthly cash payments due to him (later paid), and the conversation ensuing at that time, that, if he had an additional claim against the estate, or had any idea of pressing such a claim, he would not have put himself in the position of presenting in that first charge what was fairly considered his sole account. Ordinarily prudence and caution would have prescribed a different course. Claimant is not in the position of one who did not know; he kept the books and must have known what this account contained. The court below found against the claim. The findings of fact have the force and effect of a verdict of a jury, and will not be disturbed if there is evidence to support them: Glenn v. Trees, 276 Pa. 165, 167-8.

The decree is affirmed, costs to be paid by appellant.