## Rocks et al., Appellants, v. Sheppard.

Argued October 3, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*John Duggan, Jr.,* with him *H. S. Dumbauld,* for appellants, cited: Coyne v. Order of Heptasophs, 106 Md. 54.

*Henry Eastman Hackney,* of *Shelby, Hackney & Ray,* for appellees, cited: Smith's Est., 144 Pa. 428; Helfenstein's Est., 77 Pa. 328.

OPINION BY MR. JUSTICE FRAZER, November 24, 1930:
Plaintiffs' bill avers that Francis Rocks assigned to Peter E. Sheppard policies of life insurance to secure indebtedness of Rocks to Sheppard and others; that Rocks subsequently died and Sheppard collected the proceeds of the policies, paid the indebtedness, and created a parol trust of the remainder in the sum of $50,000 for the benefit of the widow and children of Rocks; that Sheppard made an assignment for benefit of his creditors, and to continue him as trustee would jeopardize the interests of plaintiffs; and prayed that Sheppard be directed to account for the sum of $50,000 and a suitable trustee be appointed in his place. The answer denied the creation of the alleged trust. After hearing, the court below dismissed the bill, holding that the existence of a trust was not sufficiently established. This appeal is from the decree dismissing the bill.

Appellants' history of the case wholly disregards Rule 51 of this court requiring a condensed chronological statement of the facts necessary to be known to determine the points in controversy. From the record it appears to be undisputed that at the time the assignments of the policies were executed by Rocks he was financially involved, and Sheppard and others were creditors to a large amount. Rocks was unable to pay the premiums on his life insurance policies, and to enable his creditors eventually to reimburse themselves, the policies were transferred to Sheppard by absolute and unconditional assignments. The premiums were paid subsequently by creditors until the death of Rocks when they collected on the policies and reimbursed themselves out of the proceeds. The exact amount so collected does not appear in the testimony nor is it material here. The important question is whether Sheppard actually created a parol trust as to the $50,000 in favor of the widow and children of Rocks.

There was no record of the alleged trust found by the executrix among Sheppard's papers following his death, nor was a fund actually set aside or designated as the subject-matter of a trust. It is admitted that payments purporting to have been interest on the alleged $50,000 trust fund were made by Sheppard to Rock's widow amounting in all to $10,500. While these payments were evidence tending to show the creation of a trust, they were, of course, not conclusive and under the facts proven by plaintiffs the payments were as consistent with a mere intention to establish a trust in the future as with a trust actually created.

The chancellor expressly found that no agreement existed which required Sheppard to account for any part of the proceeds of the insurance policies, and an examination of the record shows this finding to be fully supported by the evidence. The proof of the alleged oral trust consists of the testimony of witnesses that Sheppard at various times declared an intention to establish

an indefinite form of trust of the remainder of the proceeds of the policies for the benefit of Rock's family. One witness testified that Sheppard informed him he proposed doing everything in his power to take care of the family out of the insurance money after having paid all indebtedness, and that he anticipated there would be approximately $50,000 left which he purposed to have invested in a trust fund so that the principal would remain for the children. An attorney called as a witness testified Sheppard stated to him the insurance money had not at that time been collected, but that there would be in the neighborhood of $50,000 of it left after the debts were paid, and that after he "got it all straightened up" he desired the witness to prepare an agreement placing the remainder in trust for Mrs. Rocks and the children. Another witness stated Sheppard said he had $50,000 of insurance money left which he was "holding for Mrs. Rocks." At another time Sheppard informed the witness he was paying Mrs. Rocks "the interest on her money," and that he had made "an arrangement with Mrs. Rocks by which he was to hold the money and pay her the interest." One witness testified Sheppard said he had actually invested the $50,000, and it was to remain in trust until the youngest child was twenty-one years of age, at which time it was to be divided among "either the children or the survivors," and that a writing to that effect had been drawn up and filed, and upon a settlement of the estate, a statement would be given of everything, including the $50,000 trust fund. While this testimony tended to show the trust had actually been created and the fund set aside, no such papers were found, nor was there anything to indicate that a sum of money had been earmarked and set aside for that purpose. The testimony, taken as a whole, fully supports the conclusion of the court below that, although it was the intention of Sheppard to create a trust of whatever amount was left of the insurance fund after payment of

debts and expenses, this intention was not actually carried out.

A trust as to personalty may be established by parol (Smith's Est., 144 Pa. 428; Christian Moerlein Brewing Co. v. Rusch, 272 Pa. 181, 186, 187), but to create such trust the burden is on plaintiff to furnish proof by evidence clear, precise and indubitable: Washington's Est., 220 Pa. 204, 204; Hollis v. Hollis, 254 Pa. 90, 95. "It is well settled, however, that whether a gift or a trust is intended, if the transaction still remains imperfect and executory, equity will not aid in its enforcement. The expression of a mere intention to create a trust, therefore, without more, is insufficient; like a promise to give, it will not be enforced in equity": Smith's Est., 144 Pa. 428, 434. And in Dougherty v. Shillingsburg, 175 Pa. 56, 58, this court said, "It may be conceded that equity will not lend its aid to the creation of a voluntary parol trust, however clear may have been the intention of the donor to create such trust; but if the donor himself actually creates or establishes the trust, equity will enforce its execution."

Tested by the above rules, the evidence in the present case falls short of necessary proof to show actual creation of a trust by Sheppard. Taken as a whole, it indicates an intention to create a trust fund of whatever remained of the proceeds of the insurance policies, which he estimated would be approximately $50,000; the record however is deficient in proof to the effect that this estimate of a surplus finally proved to be correct or that a trust of the sum stated or any other amount was actually established either orally or by writing. At most there was an expression of an intention to create a trust which was never carried out, consequently a court of equity is without authority to supply the omission.

In view of our disposition of the case, we need not consider the question whether all necessary parties were joined in the proceedings.

The decree of the court below is affirmed at appellants' costs.