## Dukinas' Estate

*Ernest K. Herskovitz* and *Joseph A. Kozak,* for petitioners.

*Frank A. Pinola,* for respondent.

HOURIGAN, P. J., November 5, 1947.—Helen Dukinas died testate on July 14, 1939. Her will was probated on July 26, 1939. Letters testamentary issued to John Dukinas and Helen Dukinas Zavada. No inventory was filed. The inheritance tax appraisal shows the only personal estate to consist of a note of Helen Dukinas Zavada in the sum of $1,000. The total deductions claimed were: "Marker, $100; executors' commissions, $192.50; court costs, $75; attorney's fee, $200, a total of $567.50."

On February 21, 1947, the first and final account of John Dukinas and Helen Dukinas Zavada, trustees of the estate of Helen Dukinas, deceased, was filed. No accounting was ever made by the executors.

The trustees' account was confirmed absolutely on April 5, 1947. The audit of the account was confirmed absolutely on May 28, 1947.

On July 23, 1947, a petition was presented by two of the parties in interest, being a son and daughter of

decedent, praying "that a citation be awarded directed to John Dukinas and Helen Dukinas Zavada, as trustees . . . to show cause why the decree of confirmation of the said account should not be set aside, opened, reviewed and corrected", etc.

The petition upon which the citation was awarded alleged:

1. That no actual notice was given to petitioners of the filing of the account, as required by section 6, Rule 3 of the Supreme Court Orphans' Court Rules.

2. That petitioners did not have any notice or knowledge of the filing of the said account until after the audit had been confirmed.

3. That if petitioners had knowledge of the filing of the account, they would have filed exceptions thereto as follows:

"a. Personal Estate — Debit — that portion reading as follows:

" 'Less care and support of decedent from November 10, 1937 to June 10, 1939—19 months at $50.00 per month . . . . $950' "

The item of care and support of decedent for a period of 19 months prior to her death was paid by Helen Dukinas Zavada and John Dukinas, as trustees, to Helen Dukinas Zavada, one of the trustees, by allowing her a credit for that amount against a claim the estate had against Helen Dukinas Zavada.

"b. Rents—Debit—Exhibit 'A'. Schedule of rents received May 1, 1941 through May 1, 1942—13 months at $40 per month. Petitioners aver that the rents for the period were in excess of $40 per month.

"c. Rents—Credit—Exhibit 'B'. Schedule of expenditures reading as follows:

" '8/5/40 Collection fee Helen D. Zavada
    from 7/14/39 . . . . . . . . . . . . . . . . . . . . . . . .$48.00
" '8/5/40 Collection fee John Zavada from
    1/14/39 to 7/14/41 . . . . . . . . . . . . . . . . .$48.00' "

The petition for distribution, verified by Helen Dukinas Zavada and John Dukinas, represented to the court that "All parties having either vested or contingent interest have had actual notice of the filing of the account".

Section 6, Rule 3 of the Supreme Court Orphans' Court Rules provides:

"No account shall be confirmed unless the accountant has given written notice of the filing of the account and the call thereof for audit or confirmation to every unpaid creditor who has given written notice of his claim to the accountant and to every other person of whom the accountant has notice or knowledge who claims an interest in the estate *as beneficiary or next of kin.*"

Certainly the accountants knew the provisions of the will and knew their next of kin, being brothers and sisters. The Luzerne County Orphans' Court Rules provides that "Proof of service of notice . . . shall be filed with the register of wills and presented to the Court at the time the account is submitted for confirmation nisi". No such proofs of notice were filed with the register of wills or presented to the court.

Accountants admit that no notice other than the public advertisement was given to anyone of the filing of the account. They contend that no other notice is necessary.

We are of opinion that the Supreme Court meant what it said when section 6, rule 3, was promulgated and that it should be complied with by all accountants. In many instances no one is prejudiced by the failure to give notice. But when they are and the notice, as provided for in the rules is not given, the confirmation should be set aside, opened, reviewed and corrected.

The next question then is, have petitioners been prejudiced by the failure of the accountants to give them notice of the filing of their account?

The accountant, Helen Dukinas Zavada, is a daughter of decedent. The proving of her claim for care and support of her mother places a heavy burden upon her. The alleged services were rendered prior to July 14, 1939. The date when she and her cotrustee gave her a credit against her note does not appear in the account. The statute of limitations may have run against it. No credit was taken for this claim in the deductions for inheritance tax purposes.

At the outset we are met with that well-known rule of law, stated by Judge Rhodes in Reed Estate, 152 Pa. Superior Ct. 389, wherein he said (p. 392) :

"It is the general rule, especially applicable to the present case, that services rendered by a child to a parent are presumably gratuitous, and no payment therefor can be demanded unless a contract to so reward has been proved by clear, distinct, and positive evidence. . . ."

The law for services against decedents' estate for care and support of decedent is reviewed by Judge Ross in Monson Estate, 160 Pa. Superior Ct. 631, 632-633:

"Claims against a dead man's estate which might have been made against him during his lifetime are subjects of just suspicion. In Gilbraith's Estate, 270 Pa. 288, 113 A. 361, a leading case which has been consistently followed, Mr. Justice Simpson stated at page 291: 'We said in Carpenter v. Hays, 153 Pa. 432, 434, and have since frequently repeated, "without variableness or shadow of turning" therefrom, that "claims against a dead man's estate, which might have been made against himself, while living, are always subjects of just suspicion, and our books, from Graham v. Graham, 34 Pa. 475, to Miller's Est., 136 Pa. 239 (249), are full of expressions by this court of the necessity of strict requirement of proof and the firm control of juries in such cases." ' In Conrad's Estate, 333 Pa. 561, 3 A. 2d 697, the Supreme Court,

in reversing the auditing judge and disallowing the claim, stated in an opinion by Mr. Chief Justice Kephart at pp. 567 and 568: 'This court has frequently stated that where a claim which could have been made against a decedent during his lifetime is not presented until after his death, it is viewed with the greatest suspicion.' As stated by Mr. Justice Drew in Mooney's Estate, 328 Pa. 273, 194 A. 893, at page 274: 'We have said many times that claims of this nature must be subjected to the closest scrutiny, being objects of just suspicion (Gross's Est., 284 Pa. 73, 75; Reynolds v. Williams, 282 Pa. 148, 150) and must be established by evidence "clear, precise and indubitable": Copeland's Est., 313 Pa. 25, 29; Rocks v. Sheppard, 302 Pa. 46, 50; see also Calvert v. Eberly, 302 Pa. 152; Goodhart's Est., 278 Pa. 381.' "

Clearly we must view with suspicion not only the claim itself but all the facts and circumstances in connection with its allowance against a debt the trustee creditor owed the decedent's estate.

Petitioners should be given an opportunity to be heard in the interest of justice.

"Irrespective of the statute, the Orphans' Court possesses an inherent discretionary power to correct its own records in the interest of justice, even to protect parties from the effect of their own mistakes and blunders. Relief will be granted where justice and equity require, and where no rights have changed in consequence of the decree, and no one will be injured thereby": 2 Hunter's Pennsylvania Orphans' Court Commonplace Book, 1154, and cases therein cited.

Now, November 5, 1947, the confirmation of the first and final account of John Dukinas and Helen Dukinas Zavada as trustees of the estate of Helen Dukinas, deceased, is set aside and opened to review. Petitioners are given 15 days to file exceptions to the account. The audit of the said account and the confirmation thereof is vacated.