In Re ESTATE OF ELIZABETH E. FOX, *Deceased*

(No. 9999)

Submitted April 6, 1948. Decided May 18, 1948.

430

*Hunter & Hopkins* and *Glenn Hunter*, for plaintiff in error.

*George R. Farmer*, for defendant in error.

LOVINS, JUDGE:

This case comes here on writ of error and supersedeas to a judgment of the Circuit Court of Monongalia County, and involves the validity of the claim of Nellie M. Fox against the estate of Elizabeth E. Fox for services rendered to the decedent.

Nellie M. Fox, the claimant, is the wife of Merley Fox, a son of decedent, and resides in Sharon, Pennsylvania. Elizabeth E. Fox seems to have resided in Morgantown, Monongalia County, West Virginia, but on a date, not clearly shown in the record, she went to live with her son and daughter-in-law at their home in the State of Pennsylvania. On December 18, 1942, while at the home of her son, she fell and sustained a broken hip. By reason of that injury she was confined to her bed for about seven months and to her room until her death on February 20, 1946, a period of thirty-eight months.

During the time of decedent's illness, claimant performed various nursing services, prepared and served meals to decedent in her room. Her claim against the estate is based on those services, but no charge is made against decedent's estate for room and board.

During her illness, decedent made various statements to the daughters and son-in-law of claimant, to the effect that she would pay claimant for the care bestowed upon

her; that Merley Fox and claimant would not regret their services to her; and that she felt obligated to claimant for such services.

Elizabeth E. Fox left a will by which she directed that all her property be sold by the executor of her will, and, from the proceeds of the sale thereof, she bequeathed two hundred dollars to a son, O. L. Fox; five hundred dollars to the son, Merley Fox, the husband of claimant; and disposed of the residue of the proceeds of sale of her property by bequeathing such proceeds to her four children and their descendants "equally share and share alike". The will was probated by the County Court of Monongalia County on February 25, 1946, the order of probate reciting that decedent was a resident of said county and had died therein on February 20, 1946; but it seems that she died in the Town of Sharon, Pennsylvania.

The estate having been referred to a commissioner of accounts, the said commissioner received and filed the claim of Nellie M. Fox for thirty-eight months' services, commencing on December 18, 1942, and ending on the date of decedent's death on February 20, 1946, at thirty dollars a month, amounting to eleven hundred and forty dollars. E. D. Faux, a son of decedent, filed a counter-affidavit, denying the legality of the claim and objecting to the allowance thereof. Claimant, together with her two daughters and her son-in-law, testified in support of the claim. No proof was offered by E. D. Faux or any other person in opposition to the claim. It appears from the commissioner's report that the gross amount of the estate of Elizabeth E. Fox was $4,782.55, and that the executor of her will had made disbursements of $1,785.46.

The commissioner, in his report, denied the claim of Nellie M. Fox, and she excepted to said report. On consideration of the exceptions and the report, the County Court of Monongalia County overruled the exceptions and confirmed the report. On writ of error, the Circuit Court of Monongalia County overruled the exceptions and confirmed the report. Nellie M. Fox now brings the case here by writ of error.

The conflicting contentions of the parties to this litigation give rise to the following questions:

(1) Is the testimony introduced by claimant, or any part thereof, inadmissible?

(2) Are the laws of West Virginia or of Pennsylvania applicable?

(3) Is the evidence sufficient to establish claimant's right to compensation under the laws applicable to this case?

Claimant testified, over objections, relative to the services rendered by her to decedent. It is now argued that her testimony is inadmissible on the ground that she is a party to the litigation and interested in the outcome thereof. Although, in certain cases, the rights of litigants are to be determined by the laws of another state, the procedural laws of this State govern in all cases instituted in the courts of West Virginia. *Wood* v. *Shrewsbury,* 117 W. Va. 569, 186 S. E. 294; *Wick* v. *Dawson,* 42 W. Va. 43, 24 S. E. 587; *Dulin* v. *McCaw,* 39 W. Va. 721, 731, 20 S. E. 681.

At common law the testimony of parties to the record and parties having a direct interest in the outcome of the litigation was inadmissible. But it is provided by statute that: "No person offered as a witness in any civil action, suit or proceeding, shall be excluded by reason of his interest in the event of the action, suit or proceeding, or because he is a party thereto, except as follows: No party to any action, suit or proceeding, nor any person interested in the event thereof, * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, * * *." Code, 57-3-1. The statute just quoted enlarged the competency of witnesses, but did not alter incompetency in certain cases therein excepted as it existed at common law. *Crothers' Adm'r.* v. *Crothers,* 40 W. Va. 169, 20 S. E. 927. Being a party to the litigation and directly interested in the event of this suit,

by the terms of the statute claimant is incompetent to testify as to any personal transaction between her and decedent. *Freeman* v. *Freeman,* 71 W. Va. 303, 76 S. E. 657.

However, the testimony of the daughters and son-in-law of claimant, who were not parties to the record and had no direct, certain and vested interest in the result of this litigation, is admissible. *Keatley* v. *Chevrolet Co.,* 121 W. Va. 669, 673, 6 S. E. 2d 1; *Lilly* v. *Ellison,* 107 W. Va. 402, 148 S. E. 380; *Hollen* v. *Crim & Peck,* 62 W. Va. 451, 59 S. E. 172. Therefore, we conclude that the testimony of claimant was inadmissible, but that the testimony of her son-in-law and daughters was admissible.

But the record does not show that the testimony of claimant's son-in-law and daughters was rejected, and it is reasonable to assume that the commissioner considered the testimony of those witnesses in making his finding. Thus we perceive no reversible error with respect to the first question hereinabove noted.

This brings us to a consideration of the second question presented herein. This question is of importance because the laws of the State of Pennsylvania differ from the laws of this State with respect to the application of certain presumptions. It is an elementary rule, similarly applied in each state, that wherever services are rendered and received, a contract of hiring or an obligation to pay compensation will generally be presumed. But qualifying the scope of this general rule of law, is another rule to the general effect that, in the absence of an express contract providing therefor, services rendered between near relatives living in the same household as members of the family are presumed to be gratuitous. It is on the application of the second presumption, qualifying the general rule of law first stated above, that the laws of this State differ from the laws of Pennsylvania.

The case of *Ireland* v. *Hibbs,* 125 W. Va. 31, 22 S. E. 2d 706, is the most recent case dealing with the subject in this State. The opinion therein reviews and collates some of the prior opinions of this Court, and states the basic

principle as follows: "* * * where the relationship of parent and child, or any relationship of consanguinity and circumstances akin thereto, is shown to exist, the presumption is that the services related to the care and maintenance of either party by the other are presumed to be rendered gratuitously, and that in order to recover therefor the claimant must go beyond showing the rendition of the service, its value, and the fact that no remuneration has been received. In order to overcome the presumption that pay was not intended, it must be shown that at the start the recipient expected to pay and the performer expected remuneration. This may be shown by either an express understanding or by clear proof of circumstances from which it is necessarily implied." See *In re Estate of John C. Gilbert,* 115 W. Va. 599, 177 S. E. 529; *Browning* v. *Browning,* 108 W. Va. 81, 150 S. E. 233; *Keys, Admr.* v. *Keys, et al.,* 93 W. Va. 33, 116 S. E. 681; *Thompson* v. *Halstead, et al.,* 44 W. Va. 390, 29 S. E. 991; *Broderick* v. *Broderick,* 28 W. Va. 378; and *Stansbury* v. *Stansbury,* 20 W. Va. 23. The same principle is applicable. as between a mother-in-law and a daughter-in-law. *Thompson* v. *Halstead, et al., supra.*

In the opinion of the comparatively recent case of *In re Roberts' Estate,* 350 Pa. 467, 39 A. 2d 592, the Supreme Court of Pennsylvania makes a similar review and collation of prior expressions of that Court, and therein states the basic principle as follows: "The applicable principles of law are comprehensively stated in Mooney's Estate, 328 Pa. 273, page 274, 194 A. 893, 894, where Mr. Justice Drew said: '[Claimant's] burden * * * is extremely heavy. We have said many times that claims of this nature must be subjected to the closest scrutiny, being objects of just suspicion (Gross's Estate, 284 Pa. 73, 75, 130 A. 304; Reynolds v. Williams, 282 Pa. 148, 150, 127 A. 473), and must be established by evidence "clear, precise and indubitable". Copeland's Estate, 313 Pa. 25, 29, 169 A. 367, 368; Rocks v. Sheppard, 302 Pa. 46, 50, 152 A. 754. See, also, Calvert v. Eberly, 302 Pa. 152, 153 A. 146; Goodhart's Estate, 278 Pa. 381, 123 A. 318. * * *.' "

Furthermore, under the law of Pennsylvania, a person presenting a claim, such as here considered, must overcome a presumption that any services rendered were paid for from time to time, while they continued. *In re Robert's Estate, supra; Gross's Estate* (Pa.), 130 A. 304; *Flacous* v. *Wood* (Pa.), 103 A. 549. No such presumption exists under the laws of this State, although, of course, the ordinary burden of proving non-payment does rest upon claimant. *Ireland* v. *Hibbs, supra.*

Thus it will be seen that in regard to the creation of the substantive rights here asserted by claimant, there is a slight difference between the laws of this State and the laws of Pennsylvania. It is to be admitted that the major distinction is one of proof, which is procedural. Nonetheless, we think the difference between the laws of the two jurisdictions is more than one of procedure. Accordingly, we must determine the answer to the second question set forth above.

The alleged contract in this case was created in the State of Pennsylvania, and the services allegedly rendered thereunder were performed in that state. It is reasonable to assume that any payment therefor likewise would have been made in Pennsylvania, had decedent lived. Therefore, the law of Pennsylvania is determinative of the substantive rights of the parties as regards the claim here presented. *Boyd* v. *Pancake Realty Co.*, 131 W. Va. 150, 46 S. E. 2d 633; *Wood* v. *Shrewsbury, supra; Wick* v. *Dawson, supra; Klinck* v. *Price,* 4 W. Va. 4.

In concluding that the laws of Pennsylvania control in the determination of this claim, we have considered the cases of *Poling* v. *Poling,* 116 W. Va. 187, 179 S. E. 604, and *Campen Bros.* v. *Stewart,* 106 W. Va. 247, 145 S. E. 381. In those cases this Court refused to enforce in this State certain rights which were created, recognized and enforceable under the laws of another state, but were contrary to the public policy and law of this State. We were not there concerned with the recognition, alone, of rights created in another state, which were definite. In the *Poling*

and *Campen Bros.* cases, this Court was concerned only with the enforcement of those rights, when such enforcement was contrary to the public policy and the law of this State. As has been stated, both states recognize and enforce the rights here considered. There is no conflict of public policy and law between the two states, as existed in the *Poling* and *Campen Bros.* cases. The conflict here is solely one of recognition of substantive rights.

Applying these principles to the admissible proof offered by claimant in support of her claim, it is obvious that no express contract has been proved. Nor do we hesitate to say that the proof offered to establish the existence of an implied contract is not sufficient. There is no evidence that decedent and claimant agreed upon a price for the services rendered. The only proof offered is testimony relative to declarations made by decedent, as hereinbefore stated. Such declarations were indefinite and of such a nature that more than one inference could be drawn therefrom. There is no basis for a clear inference that decedent intended to compensate claimant on a contractual basis, or that claimant expected remuneration for the services rendered. The declarations of decedent do not constitute "clear proof of circumstances from which * * * [a contract] * * * is necessarily implied", as required by *Ireland* v. *Hibbs, supra.* That being true, it is even more apparent that such declarations do not constitute evidence of an implied contract which is "clear, precise and indubitable", as required by *In re Roberts' Estate, supra.*

Moreover, the commissioner, the County Court of Monongalia County, and the Circuit Court of Monongalia County have determined as a fact, that no contract, express or implied, was created. Such findings are clearly correct and will not be disturbed by this Court.

Accordingly, the judgment of the Circuit Court of Monongalia County is affirmed.

*Affirmed.*